## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **VEREIT, Inc.,** | **Case No. 17 Civ. 6546** |
| **Plaintiff,** |  |
| **v.** | **COMPLAINT** |
| **Nicholas S. Schorsch, Peter M. Budko, William M. Kahane, and Edward M. Weil,** |  |
| **Defendants.** |  |

Plaintiff VEREIT, Inc., formerly known as American Realty Capital Properties, Inc. ("VEREIT"), upon knowledge of its own conduct and otherwise upon information and belief, alleges for its complaint against defendants Nicholas S. Schorsch ("Schorsch"), Peter M. Budko ("Budko"), William M. Kahane ("Kahane"), and Edward M. Weil ("Weil" and collectively "Defendants") as follows:

### INTRODUCTION

1.     VEREIT has been engaged in a dispute with Defendants—each of whom is a former director and/or officer of VEREIT—over Defendants' unreasonable and inadequate demands for advancement of nearly $5 million with respect to Schorsch and an undetermined amount with respect to the remaining Defendants in litigation expenses incurred in various litigations arising from VEREIT's activities during Defendants' service as directors or officers, including several actions pending in this District.  VEREIT is party to separate but virtually identical indemnification agreements with each Defendant.  VEREIT does not dispute that pursuant to these agreements Defendants are entitled to advancement of *reasonable* expenses Defendants incur in certain legal proceedings.  Indeed, VEREIT has already advanced over $10

million to Schorsch (or on his behalf) upon his demands for advancement under his indemnification agreement.  However, VEREIT has rejected Defendants' requests, as permitted by the indemnification agreements, where Defendants' expenses have been unreasonable or unsupported by a statement that reasonably evidences the expenses.  Schorsch has consistently submitted invoices requesting unreasonable advancements without an adequate basis.  In response, VEREIT has declined to pay certain portions of the amounts Schorsch has demanded. Budko's, Kahane's, and Weil's invoices have, without exception, inexplicably failed to segregate their legal expenses from expenses incurred by their counsel's other clients, most notably AR Capital, LLC, the parent company of ARC Properties Advisors, LLC, VEREIT's former external manager.  Therefore, VEREIT not only has been unable to determine whether Budko's, Kahane's, and Weil's expenses are reasonable, but even more importantly has been unable to discern what those expenses even are and, on that basis, has refused payment until the necessary statements are provided.  Despite repeated requests by VEREIT that Defendants comply with the requirements under the indemnification agreements, Defendants' practices have continued, and in some cases worsened.  Facing mounting costs and impending litigation in other jurisdictions, VEREIT seeks relief from this Court—which is already familiar with the matters underlying this action.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332.  The parties are completely diverse and the amount in controversy exceeds $75,000, as described in detail below.

3.      Venue is properly laid in this District pursuant to 28 U.S.C. § 1391(b).  The acts and conduct giving rise to the action herein occurred in substantial part in this District.

4.      This Court has personal jurisdiction over the Defendants because Defendants reside or transact business in the State of New York and because this action arises out of acts that occurred in the State of New York.

## PARTIES

5.      Plaintiff VEREIT is a Maryland corporation and has its principal executive offices at 2325 East Camelback Road, Suite 1100, Phoenix, AZ 85016.  VEREIT is a real estate investment trust that owns and actively manages a diversified portfolio of retail, restaurant, office, and industrial real estate properties subject to long-term net leases with creditworthy tenants.

6.      Defendant Nicholas S. Schorsch is the co-founder of VEREIT, Inc.  Schorsch served as the Company's CEO from its inception in December 2010 until his resignation effective October 1, 2014.  Schorsch served as Chairman of VEREIT's Board of Directors from February 11, 2011 to December 12, 2014.  On December 15, 2014, the Company announced Schorsch's resignation as Chairman and member of VEREIT's Board of Directors, effective December 12, 2014.  Schorsch is a co-founder and owner of AR Capital, LLC ("AR Capital"), the parent company of ARC Properties Advisors, LLC ("ARC Advisors"), the former external manager of VEREIT.  AR Capital and ARC Advisors each has its principal place of business in New York.  Schorsch is a resident of Rhode Island.

7.      Defendant Peter M. Budko was VEREIT's Executive Vice President and Chief Investment Officer from December 2010 until January 8, 2014.  Budko is a co-founder and owner of AR Capital.  Budko is a resident of North Carolina.

8.      Defendant William M. Kahane was a member of VEREIT's Board of Directors from VEREIT's formation until March 2012, and then again from February 2013 until June 24,

2014, when he resigned from the Board.  Kahane is a co-founder and owner of AR Capital.

Kahane is a resident of Rhode Island.

9.      Defendant Edward M. Weil served as VEREIT's Executive Vice President and

Secretary of the Company from its formation in December 2010 until March 1, 2012, when he

was appointed President, Chief Operating Officer, Treasurer and a member of the Board.  In

November 2013, Weil ceased functioning as an executive officer of VEREIT.  Weil resigned

from VEREIT's Board on June 24, 2014.  Weil is a co-founder and owner of AR Capital.  Weil

is a resident of New York.

## FACTS

### VEREIT's Advancement and Indemnification Obligations

10.      On September 6, 2011, VEREIT entered into identical indemnification

agreements (collectively "Indemnification Agreements") with Schorsch, Budko, Kahane, and

Weil (attached as Exhibits A through D, respectively), pursuant to which VEREIT agreed to

indemnify Defendants against legal expenses *reasonably* incurred in proceedings to which

Defendants are made, or threatened to be made, a party by reason of their status as a former

director and/or officer of VEREIT, provided that Defendants met the standard of conduct set

forth in the Indemnification Agreements, and pursuant to which VEREIT agreed to advance

*reasonable* legal expenses incurred in such proceedings.

11.      Section 4 of the Indemnification Agreements provides:

Standard for Indemnification.  If, by reason of Indemnitee's Corporate Status,
Indemnitee is, or is threatened to be, made a party to any Proceeding, the Company
shall indemnify Indemnitee against all judgments, penalties, fines and amounts paid
in settlement and all Expenses actually and *reasonably incurred* by Indemnitee or
on Indemnitee's behalf in connection with any such Proceeding unless it is
established that (a) the act or omission of Indemnitee was material to the matter
giving rise to the Proceeding and (i) was committed in bad faith or (ii) was the result
of active and deliberate dishonesty, (b) Indemnitee actually received an improper

personal benefit in money, property or services or (c) in the case of any criminal Proceeding, Indemnitee had reasonable cause to believe that his conduct was unlawful.

(emphasis added).

12.     Section 8 of the Indemnification Agreements provides, in part:

Advance of Expenses for Indemnitee.  If, by reason of Indemnitee's Corporate Status, Indemnitee is, or is threatened to be, made a party to any Proceeding, the Company shall, without requiring a preliminary determination of Indemnitee's ultimate entitlement to indemnification hereunder, advance all *reasonable* Expenses incurred by or on behalf of Indemnitee in connection with such Proceeding within ten days after the receipt by the Company of a statement or statements requesting such advance or advances from time to time, whether prior to or after final disposition of such Proceeding. Such statement or statements shall *reasonably evidence* the Expenses incurred by Indemnitee . . . .

(emphasis added).

13.     Section 10 of the Indemnification Agreements provides, in part:

Procedure for Determination of Entitlement to Indemnification.
        (a) To obtain indemnification under this Agreement, Indemnitee shall submit to the Company a written request, including therein or therewith such documentation and information as is reasonably available to Indemnitee and is *reasonably necessary to determine whether and to what extent Indemnitee is entitled to indemnification*.

(emphasis added).

14.     Section 1 of the Indemnification Agreements defines "Expenses":

(g) ***"Expenses"*** means any and all reasonable and out-of-pocket attorneys' fees and costs, retainers, court costs, transcript costs, fees of experts, witness fees, travel expenses, duplicating costs, printing and binding costs, telephone charges, postage, delivery service fees, federal, state, local or foreign taxes imposed on Indemnitee as a result of the actual or deemed receipt of any payments under this Agreement, Employee Retirement Income Security Act of 1974, as amended, excise taxes and penalties and any other disbursements or expenses incurred in connection with prosecuting, defending, preparing to prosecute or defend, investigating, being or preparing to be a witness in or otherwise participating in a Proceeding. Expenses shall also include Expenses incurred in connection with any appeal resulting from any Proceeding including, without limitation, the premium, security for and other costs relating to any cost bond, supersedeas bond or other appeal bond or its equivalent.

15.    Section 1 of the Indemnification Agreement also defines "Proceeding":

(i)  ***Proceeding"*** means any threatened, pending or completed action, suit, arbitration, alternate dispute resolution mechanism, investigation, inquiry, administrative hearing or any other proceeding, whether brought by or in the right of the Company or otherwise and whether of a civil (including intentional or unintentional tort claims), criminal, administrative or investigative (formal or informal) nature, including any appeal therefrom, except one pending or completed on or before the Effective Date, unless otherwise specifically agreed in writing by the Company and Indemnitee. If Indemnitee reasonably believes that a given situation may lead to or culminate in the institution of a Proceeding, such situation shall also be considered a Proceeding.

### The Proceedings for Which VEREIT Has Provided Advancement

16.    On October 29, 2014, VEREIT announced that it had identified errors in its quarterly filings for the first and second quarters of 2014 (the "October 29, 2014 Disclosure") based on the preliminary findings of an investigation conducted by the Audit Committee of VEREIT's Board of Directors (the "Internal Investigation").

17.    VEREIT has provided advancement for legal and other expenses incurred in several Proceedings (as defined in the Indemnification Agreements) relating to the October 29, 2014 Disclosure, including:  1) the Internal Investigation; 2) investigations by Government regulators; and 3) at least 20 civil actions pending around the country, including the putative class action before this Court entitled *In re American Realty Capital Properties, Inc. Litigation*, No. 15-mc-00040-AKH (S.D.N.Y.), and several opt-out actions and shareholder derivative actions being coordinated with the putative class action.

18.    Schorsch has retained Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss") and Budko, Kahane, and Weil have retained Kellogg, Hansen, Todd, Figel & Frederick PLLC ("Kellogg Hansen") to represent them in the various Proceedings.

**Schorsch's Requests and VEREIT's Compliance with Its Obligations**

19.    Since May 2015, Paul Weiss has sent VEREIT monthly invoices for legal fees incurred on behalf of Schorsch that reflect unreasonably excessive fees, often without providing an adequate basis for, or description of, the nature of the work performed.

20.    As just one example, despite VEREIT's repeated requests for more detailed descriptions, Schorsch's counsel's invoices consistently bill hundreds of hours of time and describe the work in wholly generic and inadequate terms, thereby failing to provide VEREIT with information that "reasonably evidence[s]" the expenses incurred by Schorsch, as required under the Indemnification Agreements, and preventing VEREIT from determining whether the fees sought are reasonable.  *See* Ex. A, § 8.

21.    Despite the ongoing disputes regarding the reasonableness of certain of the fees sought by Schorsch, VEREIT has already advanced more than $10 million in legal fees and other expenses to Schorsch (or on his behalf).

**Budko's, Kahane's, and Weil's Requests and VEREIT's Compliance with Its Obligations**

22.    In addition to representing Budko, Kahane, and Weil, Kellogg Hansen also represents AR Capital, ARC Advisors, and two other individual former directors or officers of VEREIT.  The invoices that Kellogg Hansen has submitted to VEREIT purportedly for Budko, Kahane, and Weil, and for which they seek advancement, have from the very beginning of the Proceedings, failed to segregate their expenses from those of AR Capital and Kellogg Hansen's other clients, despite repeated requests from VEREIT to do so.  Those invoices therefore do not "reasonably evidence" the expenses these Defendants have incurred.  *See* Exs. B-D, § 8.  Despite repeated requests by VEREIT that Kellogg Hansen segregate its invoices so that VEREIT can determine the fees being sought on behalf of the individual former directors and officers,

Kellogg Hansen has refused to do so, presumably because such effort would evidence what is clear from the nature of the Proceedings, namely that the large majority of Kellogg Hansen's fees were incurred on behalf of its clients AR Capital and ARC Advisors, rather than its other clients.

23.     Without segregated invoices, VEREIT has been unable to determine what expenses have been incurred by Budko, Kahane, and Weil, much less whether they are reasonable, and therefore, as permitted by the Indemnification Agreements, has withheld payment until Budko, Kahane and Weil provide the required statements.

## Other Advancement Litigation

24.     In a transparent effort to select an advantageous, but inappropriate, forum, Defendants recently initiated actions in the Delaware Court of Chancery alleging that VEREIT breached the Indemnification Agreements.

25.     First, on August 17, 2017, Schorsch filed suit in the Delaware Court of Chancery against VEREIT (the "First Delaware Action").

26.     On August 21, 2017, VEREIT removed the First Delaware Action to the United States District Court for the District of Delaware.

27.     On the morning of August 24, 2017, Schorsch voluntarily dismissed the First Delaware Action.

28.     On the afternoon of August 24, 2017, Schorsch, Budko, Kahane, and Weil filed suit in the Delaware Court of Chancery against VEREIT and VEREIT Operating Partnership, L.P. ("VEREIT OP"), which is a subsidiary and the operating partnership of VEREIT, bringing advancement claims against VEREIT, and Budko, Kahane, and Weil brought a single claim against VEREIT OP alleging that it violated its advancement obligations under its Agreement of Limited Partnership (the "Second Delaware Action").

29.     Budko's, Weil's, and Kahane's claim against VEREIT OP was asserted in clear violation of a tolling agreement between them and VEREIT OP.

30.     VEREIT OP will file an action in New York State court against Budko, Kahane, and Weil seeking relief for their breaches of the tolling agreement.

31.     VEREIT and VEREIT OP will also seek dismissal or a stay of the Second Delaware Action so that these issues may be litigated in this Court, which has been adjudicating actions relating to the October 29, 2014 Disclosure for nearly three years and is therefore best-suited to adjudicate this action.

## FIRST CAUSE OF ACTION: DECLARATION

32.     VEREIT repeats and re-alleges the allegations in paragraph 1 through 31 of this complaint.

33.     Defendants have failed to satisfy the requirements for advancement of certain expenses, and VEREIT has fully complied with the Indemnification Agreements.

34.     An actual controversy exists between the parties.  A declaration as to whether VEREIT has complied with the Indemnification Agreements will help resolve the legal issues presented in this lawsuit and relieve the parties of uncertainty.

35.     VEREIT is therefore entitled to a declaration under 28 U.S.C. § 2201(a) that it has fully and completely complied with the procedure for advancement under the Indemnification Agreements.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff VEREIT hereby requests:

1.     Entry of judgment and a declaration in VEREIT's favor that VEREIT is in compliance with its obligations for advancement to Defendants under the Indemnification Agreements.

Dated: August 28, 2017

New York, New York

MILBANK, TWEED, HADLEY & McCLOY LLP

By: _/s/ Alan J. Stone_____
        Scott A. Edelman
        Alan J. Stone
        sedelman@milbank.com
        astone@milbank.com
        28 Liberty Street
        New York, New York 10005-1413
        Telephone:  (212) 530-5000
        Facsimile:  (212) 530-5219

        *Attorneys for Plaintiff VEREIT, Inc.*