THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **VEREIT, Inc.,**<br><br>              **Plaintiff,**<br><br>      v.<br><br>**Nicholas S. Schorsch, Peter M. Budko, William M. Kahane, and Edward M. Weil,**<br><br>              **Defendants.** | Civil Action No. 17-cv-6546<br><br>**ORAL ARGUMENT REQUESTED** |

### DEFENDANTS' MEMORANDUM OF LAW
### IN SUPPORT OF THEIR MOTION TO DISMISS OR STAY

Defendants Nicholas S. Schorsch, Peter M. Budko, William M. Kahane, and Edward M. Weil (collectively, "Defendants"), by and through their undersigned counsel, hereby submit this memorandum of law in support of Defendants' motion to dismiss Plaintiff VEREIT, Inc. ("Plaintiff" or "VEREIT")'s complaint in the above-referenced action (the "Complaint") for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or to stay this action pending the completion of limited jurisdictional discovery. In the alternative, this case should be dismissed or stayed pursuant to the *Wilton-Brillhart* abstention doctrine. For the reasons stated herein, Defendants' motion should be granted and Plaintiff's Complaint should be dismissed.

### I.     PRELIMINARY STATEMENT

Plaintiff relies solely on diversity of citizenship pursuant to 28 U.S.C. § 1332 ("Section 1332") for subject matter jurisdiction in this case. Plaintiff's attempt to manufacture diversity jurisdiction, however, fails. Despite Plaintiff's representation that its principal place of business is in Arizona, less than a year ago, Plaintiff represented to another district court that VEREIT

1

performs significant management activities in New York and that a majority of its executives live and work in New York. A majority of VEREIT's executives still live and work in New York. Uncontroverted facts, including VEREIT's own pleadings, demonstrate that VEREIT's principal place of business is in New York, making Plaintiff a citizen of New York for diversity purposes. Defendant Weil is also a citizen of New York. Thus, Plaintiff and Defendant Weil are both citizens of the same state, which destroys complete diversity of citizenship. Accordingly, the Court does not have subject matter jurisdiction pursuant to Section 1332, and Plaintiff's Complaint must be dismissed. Alternatively, should this Court find it cannot determine as a matter of fact VEREIT's principal place of business based on the present record, the action should be stayed pending limited jurisdictional discovery for the purpose of establishing VEREIT's principal place of business. In the event the Court finds subject matter jurisdiction exists, this declaratory judgment action should still be dismissed or stayed in favor of the parallel proceedings in Delaware state court.

## II.      BACKGROUND

### A.      Procedural Background

On August 24, 2017, Defendants filed an action for advancement in the Delaware Court of Chancery (the "Delaware Action") against VEREIT and VEREIT Operating Partnership, L.P. ("Operating Partnership") seeking to enforce their clear contractual right to the payment of attorneys' fees and expenses incurred in the defense of various actions against Defendants in their capacity as officers or directors of VEREIT and sought expedited proceedings. On August 29, 2017, VEREIT filed the Complaint in this action seeking declaratory judgment that VEREIT had fully complied with its advancement obligations despite having failed to pay millions of dollars in legal fees and expenses incurred by Defendants. VEREIT filed suit in this Court in an attempt to frustrate Defendants' advancement rights and to prevent the adjudication of those

2

rights on an expedited basis in the Delaware Court of Chancery. On August 31, 2017, the Delaware Court of Chancery heard argument on Defendants' request for expedited proceedings and granted such request, setting a hearing date for November 21, 2017 to address Defendants' Motion for Summary Judgment on their advancement claims and Plaintiff's Motion to Dismiss or Stay in favor of this action.

### B. Allegations Concerning the Citizenship of the Parties

In the Complaint, VEREIT alleges that its principal executive offices are in Arizona. Yet, notwithstanding this allegation, VEREIT continues to have deep and ongoing contacts in New York such that New York is properly considered VEREIT's "nerve center" for purposes of diversity jurisdiction. This is not surprising given that VEREIT was headquartered in New York until January 2015, which is when it moved its principal executive offices to Arizona.[1] To this day, VEREIT admittedly still performs significant management activities in New York and attested to this fact recently, on March 24, 2017, in support of a motion to transfer an action from the United States District Court for the District of Maryland to this Court, stating: "[A]lthough Nominal Defendant ARCP [n/k/a VEREIT] changed the location of its designated principal executive offices from New York to Phoenix in January 2015, key members of current management, including VEREIT's Chief Executive Officer, Chief Financial Officer, and General Counsel, live in New York and perform significant management activities there." Mem. of Law of Nominal Def. and Certain Individual Defs.' Motion to Transfer Venue or, in the Alternative, Stay the Action at 21, *Meloche v. Schorsch*, No. 1:16-cv-03366-ELH (D. Md. Mar. 24, 2017), ECF No. 72-1 ("Maryland Pleading"). In addition, VEREIT's General Counsel, Lauren Goldberg, submitted a declaration in support of that motion to transfer averring these same facts.

---

[1] *See* Exhibit A (VEREIT's Form 8-K filed January 20, 2015, filed as an attachment to VEREIT's Maryland Pleading).

3

Decl. of Lauren Goldberg in Support of Nominal Def. and Certain Individual Defs.' Motion to Transfer Venue or, in the Alternative, Stay the Action ¶ 4, *Meloche v. Schorsch*, No. 1:16-cv-03366-ELH (D. Md. Mar. 24, 2017), ECF No. 72-4 ("Goldberg Decl.") ("Even today, key members of VEREIT's management, including its Chief Executive Officer, Chief Financial Officer, and General Counsel, live in New York and perform significant management activities from VEREIT's offices in New York, New York.").

Consistent with these sworn statements, New York is where VEREIT's corporate officers live, work, and "direct, control, and coordinate" VEREIT's activities. Of the six members of VEREIT's management team, only one is based in Arizona—Thomas W. Roberts, the Executive Vice President and Chief Investment Officer. The rest—Glenn Rufrano (Chief Executive Officer), Michael J. Bartolotta (Executive Vice President and Chief Financial Officer), Lauren Goldberg (Executive Vice President, General Counsel, and Secretary), Paul McDowell (Executive Vice President and Chief Operating Officer), and Bill Miller (Executive Vice President, Investment Management)—live and/or work in New York.[2] Online searches reveal that a significant number of other high-level VEREIT employees and their administrative assistants also live and work in New York.[3] Moreover, correspondence to VEREIT under the relevant agreements and notice provisions must be sent to New York.[4]

---

[2] *See, e.g.,* Goldberg Decl.; Exhibit B (publicly-available LinkedIn pages showing VEREIT's New York employees). Further, Rufrano, McDowell, and Goldberg each lives in New York and Rufrano, Bartolotta, McDowell, and Goldberg perform management activities on behalf of VEREIT from VEREIT's offices in New York.

[3] *See* Exhibit B.

[4] *See* Exhibit C (Tolling Agreement) at 2; Docs. 5-1, 5-2, 5-3, and 5-4 (Indemnification Agreements) at 10.

Based on the facts above, which can be considered on this Motion, VEREIT is properly considered domiciled in New York State for purposes of diversity jurisdiction. As it relates to Defendants' domicile, Defendants do not dispute the citizenships that Plaintiff alleges in the Complaint. Specifically, Mr. Schorsch is a citizen of the State of Rhode Island. Mr. Budko is a citizen of the State of North Carolina. Mr. Kahane is a citizen of the State of Rhode Island. Mr. Weil is a citizen of the State of New York. Thus, VEREIT and at least one defendant are both domiciled in the State of New York.

### III. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

This Court does not have subject matter jurisdiction over Plaintiff's Complaint because there is no diversity of citizenship. Both Plaintiff and one of the Defendants are citizens of New York State. Accordingly, the Court should dismiss Plaintiff's Complaint, or order jurisdictional discovery to resolve any doubts as to Plaintiff's principal place of business.

#### A. Legal Standard

A federal court has subject matter jurisdiction based on diversity of citizenship "where the matter in controversy exceeds $75,000 exclusive of interest and costs" and the action is between "citizens of different states." 28 U.S.C. § 1332(a)(1). Section 1332 requires complete diversity of citizenship, meaning "no plaintiff may be a citizen of any state of which any defendant is also a citizen." *Neat-N-Tidy Co., Inc. v. Tradepower (Holdings) Ltd.*, 777 F. Supp. 1153, 1156 (S.D.N.Y. 1991). The citizenship of the parties when the complaint was filed is controlling for determining whether diversity jurisdiction exists. *See Frisone v. Pepsico, Inc.*, 369 F.Supp.2d 464, 470 (S.D.N.Y. 2005).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v.*

*U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). When a defendant challenges diversity jurisdiction, the plaintiff, as the party asserting diversity as a basis for jurisdiction, has the burden of showing that the grounds for diversity exist. *See Augienello v. Federal Deposit Insurance Co.*, 310 F.Supp.2d 582, 587-88. "[I]f a plaintiff's allegations of jurisdictional facts are challenged by its adversary in any appropriate manner, it must support them by competent proof." *SEC Vanguard General Corp. v. Ji*, 195 F.Supp.2d 564, 566-67 (S.D.N.Y. 2002) (internal quotations and citations omitted).

In reviewing a motion to dismiss for lack of subject matter jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat's Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010) (internal quotations omitted). When resolving a motion to dismiss under 12(b)(1), the court "may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.

### B. **Plaintiff's Complaint Should be Dismissed Because there is no Diversity of Citizenship**

As an initial matter, VEREIT's Complaint should be dismissed for its failure to adequately allege facts concerning citizenship for purposes of diversity jurisdiction. This Court has held that bald statements concerning where a party "is a resident of" are insufficient to satisfy a plaintiff's burden to establish diversity jurisdiction. *See Forte v. BNP Paribas*, 2015 WL 3604317, at *5 (S.D.N.Y. June 8, 2015). Here, although Plaintiff alleges that its principal place of business is Arizona, the Complaint is devoid of any well-pled facts to show that VEREIT's officers direct, control, and coordinate the corporation's activities from that state.

Thus, Plaintiff's cursory pleading with regard to its alleged principal place of business is insufficient and the Complaint should be dismissed for that reason alone.

Independent of its pleading failure, the Complaint should be dismissed because Plaintiff cannot establish complete diversity insofar as VEREIT's corporate officers actually direct, control, and coordinate VEREIT's activities from New York, not Arizona. Specifically, for purposes of diversity jurisdiction, a corporation is a citizen of any state in which it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(a)(1). A corporation only has one principal place of business, which the United States Supreme Court has established is determined by the "nerve center" test. *Hertz Corp. v. Friend*, 599 U.S. 77, 92-93 (2010). A corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities. . . . [I]n practice, it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center,' and is not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Id.*

As established in *Hertz*, the location listed as the principal executive offices of a corporation will not always be that corporation's principal place of business. *See Hertz*, 559 U.S. at 97 (rejecting proposition that "the mere filing of a form like the [SEC's] Form 10-K listing a corporation's 'principal executive offices' would, without more, be sufficient proof to establish a corporation's 'nerve center.'"). Accordingly, while VEREIT lists Arizona as the location of its principal executive offices for its filings with the SEC, this, without more, is insufficient to establish that VEREIT's principal place of business is in Arizona. Here, the facts show that New York is still very much the "nerve center" for VEREIT's operations. Indeed,

7

VEREIT itself stated in a proceeding before the United States District Court for the District of Maryland that significant management activities for VEREIT occur in New York and that many of the key executives live and work in New York.[5]  Online searches confirm this and show that many of VEREIT's employees live and work in New York.  Moreover, all correspondence under the key agreements at issue here must be sent to the New York office.  These facts make clear that New York is VEREIT's true principal place of business.  Thus, VEREIT is a citizen of New York for purposes of diversity jurisdiction.  Given that Mr. Weil is also a citizen of New York, there is not complete diversity of citizenship among Plaintiff and Defendants.  Accordingly, Plaintiff has failed to establish subject matter jurisdiction pursuant to Section 1332, and the Complaint must be dismissed.

Principles of judicial estoppel also support a finding that New York is VEREIT's principal place of business, and thus dismissal.  Judicial estoppel "prevents parties from taking inconsistent positions when different positions are to their advantage."  *Techno-TM, LLC v. Fireaway, Inc.*, 928 F. Supp. 2d 694, 698 (S.D.N.Y. 2013) (noting "the doctrine's purpose is to protect the integrity of the judicial process, by prohibiting parties from deliberately changing positions according to the exigencies of the moment.") (internal quotations omitted).  In *Techno-TM*, inconsistent statements about citizenship to different courts helped the Court to establish the disputed domicile of a party.  *Id*. at 699.  The party had made two different representations to two different federal courts concerning its domicile.  *Id*. at 697-98.  The Court found judicial estoppel was applicable and explained: "Representing directly opposite facts to two different federal district courts in the span of ten days is an affront to the integrity of the judicial process."  *Id*. at 698.  Based on the statements made by Plaintiff to the Maryland District Court and in the

---

[5] *See* Maryland Pleading.

Delaware Action about key executives living and working in New York, Plaintiff is judicially estopped from making any representation to the contrary. While Plaintiff went to great lengths to establish the centrality of New York to VEREIT's operations just a few months ago before the Maryland District Court to support a transfer of that action, Plaintiff has now changed its position to manufacture diversity jurisdiction. Based on the statements made to the other courts, VEREIT's nerve center, and principle place of business, is in New York. In the absence of complete diversity, this Complaint must be dismissed.

### C. In the Alternative, this Action Should be Stayed Pending Jurisdictional Discovery

In the alternative, if the Court determines additional facts are necessary for its determination, the Court should hold its decision in abeyance and direct the parties to engage in limited jurisdictional discovery for the purpose of establishing VEREIT's principal place of business. "Courts have allowed jurisdictional discovery where there has been a threshold showing for some basis to assert jurisdiction, such as facts that would support a colorable claim of jurisdiction." *Mills 2011 LLC v. Synovus Bank*, 921 F.Supp.2d 219, 228 (S.D.N.Y. 2013) (citation omitted). Here, though Plaintiff has not made a sufficient showing to support the exercise of diversity jurisdiction, Defendants would request jurisdictional discovery if the Court finds a threshold showing that New York is not Plaintiff's principal place of business. Following such discovery, the Court can set an appropriate schedule to determine if it has subject matter jurisdiction.

### IV. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED OR STAYED PURSUANT TO THE ABSTENTION DOCTRINE

If the Court determines it has subject matter jurisdiction over this action, Plaintiff's Complaint should be dismissed or stayed nonetheless pursuant to the *Wilton-Brillhart* abstention doctrine. Plaintiff seeks declaratory judgment under 28 U.S.C. § 2201(a). *Brillhart* and other

cases dictate that a federal court should stay or dismiss an action for declaratory judgment when there are parallel state proceedings. *See Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942); *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Youell v. Exxon Corp.*, 74 F.3d 373 (2d Cir. 1996). Because there are parallel proceedings in state court in the Delaware Action that will resolve the present action, this action should be dismissed or stayed in favor of the Delaware Action.

### A. Legal Standard

The Declaratory Judgment Act gives federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, 515 U.S. at 286. It is "an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant." *Id*. at 287 (internal quotation omitted). Because of this permissive nature, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id*. at 288. The *Brillhart* abstention doctrine provides "that a stay or dismissal is appropriate when the federal action could be better settled in the pending state court proceeding." *Troiano v. Mardovich*, 2006 WL 2320517, at *4 (S.D.N.Y. Aug. 10, 2006) (LAP) (citing *Wilton*, 515 U.S. at 282). "Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997).

In deciding whether to dismiss or stay an action under the Declaratory Judgment Act, courts consider the following non-exclusive factors: "(1) the scope of the pending state proceedings and the nature of the defenses available there; (2) whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding; (3) whether the necessary parties

have been joined; and (4) whether such parties are amendable to process in that proceeding; (5) avoiding duplicative proceedings; (6) avoiding forum shopping; (7) the relative convenience of the fora; (8) the order of filing; and (9) choice of law." *TIG Ins. Co. v. Fairchild Corp.*, 2008 WL 2198087, at *2 (S.D.N.Y. May 27, 2008) (JGK) (citations omitted). Moreover, "[t]he Second Circuit has also added to the analysis whether federal law supplies the rule of decision." *Winterthur Intern. America Ins. Co. v. Pepsico, Inc.*, 2002 WL 986566, at *2 (S.D.N.Y. May 13, 2002) (WK) (citing *Youell*, 74 F.3d 373).

Overall, the underlying issue is "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in state court." *Brillhart*, 316 U.S. at 495. The Supreme Court instructed that "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court may be indulging in 'gratuitous interference' if it permitted the federal declaratory action to proceed." *Wilton*, 515 U.S. at 283 (quoting *Brillhart*, 316 U.S. at 495).

### B. This Action Should be Dismissed or Stayed in Favor of the Delaware Action Pursuant to the Abstention Doctrine

Here, the *Brillhart* factors weigh heavily in favor of abstention. First, the Delaware Action is more comprehensive than this action, and encompasses the very issue raised by Plaintiff. Plaintiff seeks a declaration that it "has fully and completely complied with the procedure for advancement under the Indemnification Agreements." Complaint (Doc. 5) ¶ 35. In its answer in the Delaware Action, Plaintiff requested "a declaratory judgment that [VEREIT and Operating Partnership] have complied with the Indemnification Agreements and the Operating Partnership Agreement." Thus, Plaintiff has acknowledged that the Delaware Action involves the same issues presented by this action.

11

In addition to seeking declaratory judgment with regard to the parties' compliance with and their rights and obligations under the Indemnification Agreements, as Plaintiff seeks in this action, the Delaware Action also seeks additional relief from VEREIT, including for breach of contract, and from an additional party, Operating Partnership, for relief stemming from Operating Partnership's own indemnification obligations pursuant to its partnership agreement. The fact that the Delaware Action is more comprehensive weighs in favor of abstention.

Second, all of VEREIT's claims can be adjudicated in the Delaware Action, but the reverse is not true for the Defendants' claims in this action. In answering the complaint in the Delaware Action, VEREIT sought the very same relief it seeks from this Court—a declaratory judgment that it has complied with the Indemnification Agreements. Conversely, this action would not afford relief to Defendants for their breach of contract claims and their claims against Operating Partnership. Thus, "there is nothing that [Plaintiff] can hope to achieve in this action that it could not attempt to gain in the [Delaware] Action. On the other hand, because of the limited nature of this action, . . . there is reason to question whether [Defendants] could in this case vindicate all of the interests [they] are pursuing in the [Delaware] Action." *North American Airlines, Inc. v. International Brotherhood of Teamsters, AFL-CIO*, 2005 WL 646350, at *21 (S.D.N.Y. Mar. 21, 2005) (KMK). The ability of VEREIT to obtain complete relief in the Delaware Action and the inability of Defendants to obtain complete relief in this action weighs in favor of abstention.

Third, pursuant to Section 145 of the Delaware General Corporation Law, complaints for advancement, like the one filed by Defendants in the Delaware Action, are required to be resolved in a "summary fashion," meaning the Delaware Action provides Defendants a unique forum to have their claims resolved on an expedited basis. In fact, as set forth above, the parties

have already had a hearing with the Court of Chancery on August 31, 2017, where the Court ruled in Defendants' favor and determined that the proceedings would be expedited. A schedule has been set, with briefing on the parties' respective motions culminating in mid-November, and a hearing on those motions set for November 21, 2017. Within the next few months, the Court of Chancery will decide key issues relating to Indemnification Agreements and its jurisdiction over VEREIT. Thus, the Delaware Action is more advanced than this action, and the expedited schedule ensures prompt resolution of the uncertainty VEREIT seeks to resolve through this declaratory judgment action. On the contrary, this action is in the early stages, with no schedule or hearings set. Any briefing by the parties would likely not commence until near or after the hearing in the Delaware Action. Going forward with this action when the Court of Chancery is considering the same issues would amount to duplicative litigation and a waste of judicial resources. These considerations weigh in favor of abstention.

Fourth, the various Indemnification Agreements at issue are governed by state law. This Court has consistently held that the fact that a case is governed by state law, and not federal law, weighs heavily in favor of abstention. *See Fed. Insurance Co. v. Garner*, 2016 WL 3554929, at *4 (S.D.N.Y. June 20, 2016) (DAB) ("The fact that [state] law, and not federal law, governs weighs in favor of abstaining."); *Travelers Indem. Co. v. Philips Electronics North America Corp.*, 2004 WL 193564, at *3 (S.D.N.Y. Feb. 3, 2004) (WHP) ("The absence of federal issues weighs heavily in favor of abstention."). Indeed, the Indemnification Agreements are governed by Maryland state law, and the relevant Operating Agreement is governed by Delaware law.[6]

---

[6] "[T]he choice between different state laws is of comparatively small import, particularly when other factors point decidedly toward abstention." *A&E Television Networks v. Genuine Entertainment, Inc.*, 2010 WL 2308092, at *3 (S.D.N.Y. June 10, 2010) (RJH) (citation omitted). Further, there is no conflict between Maryland and Delaware law on the issues here, and Maryland courts routinely defer to Delaware law in advancement

13

Plaintiff can point to no reason why this Court is better suited to resolve contract issues concerning Defendants' advancement rights that arise under state law when the Delaware Court of Chancery routinely hears and resolves such claims. The fact that state law governs the issues here weighs in favor of abstention.

Fifth, in filing this action, Plaintiff engaged in forum shopping. The Delaware Action was filed on August 24, 2017, and Plaintiff did not file this action until August 29, 2017. This Court has found that when a party is aware its adversary planned to bring suit in another court and that party then files a declaratory judgment action, "the object of the declaratory action cannot be to obtain clarification of disputed rights, because the declaratory plaintiff is well aware that those disputes are about to be submitted to a court." *A&E*, 2010 WL 2308092, at *2. Rather, the Court views the filing of the declaratory judgment action as tactical. Here, VEREIT filed its action after the Delaware Action had been commenced and the filing of this action was intended "quite obviously, to shift adjudication of [Defendants'] claims from state court to federal court." *Id*. Given VEREIT's knowledge that the Delaware Action would resolve the dispute at issue, the declaratory judgment action can be seen as nothing other than forum shopping. Plaintiff's attempt at forum shopping weighs in favor of abstention.

Overall, the present "dispute is far better suited for adjudication" in Delaware because the Delaware Action "encompasses every issue raised and every party named in this case, as well as claims against additional parties that emanate from the same nucleus of facts." *A&E*, 2010 WL 2308092, at *3 (finding in such a situation that "allowing [the federal] declaratory action to stand would simply duplicate a component of the [state] proceedings."). Plaintiff's contention that this

---

actions. *See, e.g.*, *Kramer v. Liberty Prop. Trust*, 968 A.2d 120, 134 (Md. 2009) (deeming Delaware law on advancement "highly persuasive" in light of similar provisions of Delaware and Maryland indemnity statutes and "because the Delaware courts have gained a reputation for their expertise in matters of corporate law").

14

Court "has been adjudicating actions relating to the October 29, 2014 Disclosure for nearly three years and is therefore best-suited to adjudicate this action" (Complaint at ¶ 31) is unpersuasive. While this Court is certainly able to adjudicate Defendants' claims, the adjudication of a class action against the parties for accounting errors found in public filings has little, if anything, to do with the Indemnification Agreements covering the litigation costs of the parties defending that class action. Any compliance, or non-compliance, with the Indemnification Agreements is not at issue in the class action.

Moreover, Plaintiff states that VEREIT and Operating Partnership are seeking a dismissal or stay of the Delaware Action "so that these issues may be litigated in *this* Court . . ." Complaint at ¶ 31 (emphasis added). However, Operating Partnership filed an action in the New York Supreme Court against only three of the Defendants, which is at odds with the stated desire to litigate all issues before this Court. Contrary to Plaintiff's statements, VEREIT (and Operating Partnership) just want to resolve the disputes involving their indemnification obligations in any court other than the Court of Chancery. It is unclear why Plaintiff wants to litigate an action involving matters of Delaware and Maryland State law in federal court in New York. While New York may be more convenient for Plaintiff, "any convenience for the plaintiff is substantially outweighed by the inconvenience to the other parties who would have to litigate the same issues in both this action and the [Delaware] Action." *TIG Ins. Co.*, 2008 WL 2198087, at *4.

When deciding to allow briefing on both the motion for summary judgment and the motion to dismiss/stay to go forward simultaneously in the Delaware Action, Vice Chancellor Laster noted that "it seems to me that the action against the operating partnership is properly here and would go forward in any event, it makes sense to do these things in tandem." *Weil, et al. v.*

15

*VEREIT Operating Partnership, L.P. and VEREIT Inc.*, C.A. No. 2017-0613-JTL, at p. 27 (August 31, 2017) (TRANSCRIPT). As currently proceeding, the Delaware Action will allow all of the parties' claims to be resolved in one action, avoiding piecemeal and duplicative litigation. *See TIG Ins. Co.*, 2008 WL 2198087, at *4 ("[A]side from the concern of inconsistent piecemeal rulings, basic notions of judicial economy favor avoiding duplicative rulings. All else being equal, reducing the number of court proceedings involved with any given issue entails a more efficient use of judicial resources."). This action should at least be stayed pending the Court of Chancery's resolution of VEREIT's jurisdictional argument to avoid unnecessary waste and expense.

Thus, the *Brillhart* factors overwhelmingly favor abstention, and the disputes over the Indemnification Agreements and other contractual rights of the parties should be resolved in the Delaware Action. Finding abstention appropriate, it is in this Court's discretion to decide whether to dismiss or stay this declaratory action. All of the issues in this action can be resolved in the Delaware Action, and accordingly, a dismissal would not prejudice the Plaintiff.

## V. <u>CONCLUSION</u>

For the forgoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, or stay the action to permit limited jurisdictional discovery. In the alternative, Defendants respectfully request that this Court dismiss or stay Plaintiff's Complaint in favor of the Delaware Action pursuant to *Brillhart* and its progeny.

Dated: October 24, 2017        Respectfully submitted,

*/s/ Robin L. Cohen*
Robin L. Cohen
New York Bar No.: 2254019
rcohen@mckoolsmith.com
Natasha Romagnoli
New York Bar No. 3040334
nromagnoli@mckoolsmith.com
Elizabeth Sherwin
New York Bar No. 1998228
esherwin@mckoolsmith.com
**MCKOOL SMITH, P.C.**
One Bryant Park, 47th Floor
New York, New York 10036
Telephone: (212) 402-9400
Facsimile: (212) 402-9444

**ATTORNEYS FOR DEFENDANTS**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on October 24, 2017.

*/s/ Robin L. Cohen*
Robin L. Cohen