THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **VEREIT, Inc.,**<br><br>    **Plaintiff,**<br><br> v.<br><br>**Nicholas S. Schorsch, Peter M. Budko, William M. Kahane, and Edward M. Weil,**<br><br>    **Defendants.** | Civil Action No. 17-cv-6546<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFEDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR STAY UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1) (DKT. NO. 16)**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1
ARGUMENT...................................................................................................................................3
    I.    VEREIT'S ARGUMENTS ARE INSUFFICIENT TO ESTABLISH THAT IT IS NOT A CORPORATE CITIZEN OF NEW YORK.................................................3
        A.    VEREIT's Nerve Center Is In New York ......................................................3
        B.    Jurisdictional Discovery is Warranted ...........................................................6
    II.    THIS ACTION SHOULD BE STAYED OR DISMISSED IN FAVOR OF THE MORE COMPREHENSIVE AND ADVANCED DELAWARE ACTION...........6
CONCLUSION.................................................................................................................................9

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adolph Coors Co. v. Davenport Mach. & Foundry Co.*,
   89 F.R.D. 148 (D. Colo. 1981) ...............................................................................................10

*American Motorists Ins. Co. v. Glidden Co.*,
   129 F. Supp. 2d 640 (S.D.N.Y. 2001).....................................................................................11

*ASC Utah, Inc. v. Wolf Mountain Resorts, L.C.*,
   2009 WL 2857885 (D. Utah Aug. 27, 2009) .........................................................................10

*Camico Mutual Ins. Co. v. J.D. Rosen C.P.A., P.A.*,
   2017 WL 3839412 (D. Kan. Sept. 1, 2017) ...........................................................................10

*Cofimco USA, Inc. v. Mosiewicz*,
   2016 WL 1070854 (S.D.N.Y. Mar. 16, 2016) .........................................................................6

*Fed. Insurance Co. v. Garner*,
   2016 WL 3554929 (S.D.N.Y. June 20, 2016) (DAB) ............................................................11

*Hertz Corp. v. Friend*,
   599 U.S. 77 (U.S. 2010)........................................................................................................6, 7

*Kramer v. Liberty Prop. Trust*,
   968 A.2d 120 (Md. 2009) .......................................................................................................11

*Krauth v. Executive Telecard, Ltd.*,
   887 F. Supp. 641 (S.D.N.Y. 1995)............................................................................................7

*St. Paul Fire & Marine Ins. Co. v. Scopia Windmill Fund, LP*,
   87 F. Supp. 3d 603 (S.D.N.Y. 2015).....................................................................................6, 8

*Techno-TM, LCC v. Fireaway, Inc*,
   928 F. Supp. 2d 694 (S.D.N.Y. 2013) ......................................................................................8

**PRELIMINARY STATEMENT**

The facts set forth in VEREIT's own brief and "supporting" affidavit only serve to confirm that the true nerve center of VEREIT's business is, and has long been, New York. VEREIT admits that what VEREIT itself calls its "Leadership" team consists of six executive officers.[1] It further admits that Glenn Rufrano, Chief Executive Officer and board member – to whom the other five members of the Leadership team report – resides in and works primarily from New York, as do Paul McDowell, Executive Vice President and Chief Operating Officer, and Lauren Goldberg, Vice President, General Counsel and Secretary.[2] It does not deny that William Miller, Executive Vice President, Investment Management and President and CEO of Cole Capital, resides in New York, or that his employment agreement states that he will work from its New York office;[3] rather, it claims, in essence, that Mr. Miller travels a lot and therefore should not be deemed to work in this State.[4] Neither does it deny Michael Bartolotta, Executive Vice President and Chief Financial Officer, resided and worked in New York at the time of the corporate actions and decisions at issue in this case, nor that his current employment agreement provides that he is still required to "work *primarily* out of the Company's offices in New York, New York."[5] Instead it vaguely claims only that he relocated to Phoenix "as of the time this action was commenced."[6] Thus, of the six individuals which VEREIT itself claims constitute its management team, *by VEREIT's own admission,* only one, Thomas Roberts, Executive Vice President and Chief Investment Officer, resides and works in Arizona and did so at the time of the events at issue.

---

[1] Plaintiff's Opposition ("Opp.") at 6.
[2] *Id*. 7-8.
[3] *Id*. 7; Exhibit 1.
[4] Opp. 7.
[5] *Id*. at 8, fn.6; Exhibit 2.
[6] Opp. at 8, fn.6.

1

Faced with those unassailable – and unassailed – facts, VEREIT hides behind policy arguments about the dangers of "disregarding a publicly-traded company's designation of its principal executive offices" and allegations about the location of lower-level employees.  But that is the very *purpose* of the nerve center test – to preclude a company from seeking to obscure its corporate citizenship in the state where its leadership decisions are made by designating another state as its principal executive offices.

Nor can VEREIT avoid its own prior admission that *these very facts* establish it as a corporate citizen of New York by simply offering a new characterization of those facts.  Just *eight months ago*, when it saw an advantage in asserting that it was a citizen of New York, VEREIT characterized the undisputed facts as showing that "key members" of management live in New York and perform "significant management" activities here.[7]  Now VEREIT asks the Court to reject a claim that VEREIT is a citizen of New York, because *those same facts* show only that "several" of VEREIT's officers perform "certain managerial duties" in New York.  The doctrine of judicial estoppel was intended to preclude such duplicitous changes of position by a party in its arguments before a court, and, contrary to VEREIT's arguments, is directly applicable to preclude VEREIT from denying its New York citizenship here.

In short, under the facts admitted in VEREIT's opposition, long-standing black letter law on the nature of corporate citizenship, and the prior positions to which VEREIT is bound as a matter of law, VEREIT is a corporate citizen of New York, destroying diversity in this action.  At the very least, however, VEREIT's denial of that citizenship – including by its vague

---

[7] Mem. of Law of Nominal Def. and Certain Individual Defs.' Motion to Transfer Venue or, in the Alternative, Stay the Action at 21, *Meloche v. Schorsch*, No. 1:16-cv-03366-ELH (D. Md. Mar. 24, 2017), ECF No. 72-1.

references to the recent relocation of Mr. Bartolotta – cannot be taken at face value without allowing the Defendants discovery on the "facts" upon which VEREIT bases that denial.

## ARGUMENT

### I. VEREIT'S ARGUMENTS ARE INSUFFICIENT TO ESTABLISH THAT IT IS NOT A CORPORATE CITIZEN OF NEW YORK

#### A. VEREIT's Nerve Center Is In New York

As set forth in Defendants' opening brief, the United States Supreme Court has long held that a corporation's principal place of business – and thus its state of citizenship – is "where a corporation's *high level officers* direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 599 U.S. 77, 80 (U.S. 2010) (emphasis added). Moreover, as VEREIT's own cited authorities confirm, this Court has repeatedly and recently held that "the [nerve center] test focuses on where a corporation's 'high-level' decisions are made, not where day-to-day activities are managed." *St. Paul Fire & Marine Ins. Co. v. Scopia Windmill Fund, LP*, 87 F. Supp. 3d 603, 605 (S.D.N.Y. 2015) (citation omitted); *see also Cofimco USA, Inc. v. Mosiewicz*, 2016 WL 1070854, at *3 (S.D.N.Y. Mar. 16, 2016).

VEREIT selectively quotes from the holding in *St. Paul* to suggest that the Court focused on the location of non-executive managers in charge of ground-level operations. That is not the case. While the *St. Paul* court ultimately determined that the company's CEO did not actually exercise his ultimate decision-making authority, it nonetheless recognized that his location would have been a critical factor in the application of the test if he had done so. 87 F. Supp. 3d at 608. Here, of course, VEREIT does not dispute that its CEO, Mr. Rufrano, not only has and exercises ultimate managerial control over its operations, but does so from New York – where the majority of the other members of the Leadership team also reside, work, and report to him.

3

Nor can VEREIT evade that central fact by claiming that a "vast majority of second-level managers and other employees who perform the core real estate activities of both segments are based in Phoenix," (Opp. 13-14), or by the cursory conclusion that "[b]ecause VEREIT's core business is directed, controlled, and coordinated mostly by individuals located in Phoenix, VEREIT's principal place of business is its headquarters in Phoenix." (*Id*. 14). This argument suffers two critical flaws: (1) Mr. McDowell, whom VEREIT admits oversees those activities, resides in New York and spends a majority of his time working there; and (2) the "nerve center" test does not turn on the location of lower-level employees and daily management operations. Indeed, Plaintiff attempts to obfuscate the true location of high-level decision-making by focusing on where most of the executive officers only spend a minority of their time and by emphasizing where day-to-day activities are managed.

VEREIT also places irrelevant emphasis on the fact that it refers to its Arizona office as its principal executive offices—and that Defendants concede as much. (*Id*. 6, 12). That attempt to avoid New York citizenship fails for at least two reasons. First, VEREIT lists its New York offices alongside its Arizona offices in public filings and on its website as the Company's Corporate Offices.[8]

Second, it is well established that a corporation's principal executive office is not necessarily the company's "nerve center" for purposes of the *Hertz* test. *See, e.g.*, *Krauth v. Executive Telecard, Ltd.*, 887 F. Supp. 641 (S.D.N.Y. 1995). Indeed, Plaintiff's suggestion that *Hertz* establishes a bright line test that an office designated by the corporation as its principal place of business is its "nerve center" not only is unsupported by the case itself,[9] but would

---

[8] Exhibit 3.

[9] "Our approach provides a sensible test that is relatively easier to apply, ***not*** a test that will, in all instances, ***automatically generate a result***." *Hertz*, 559 U.S. at 95-96 (emphasis added).

4

promote an absurd result requiring courts applying the test to ignore facts showing that executive officers actually direct, coordinate, and control the corporation from another location. In fact, this Court has acknowledged that "the nerve center test is neither as clear-cut nor as simple to determine. . . ." *St. Paul*, 87 F. Supp. 3d at 605. VEREIT cannot be heard to argue that the Court is precluded from considering that a majority of its executive officers are based in New York, or that the employment agreements for five out of the six officers contemplate those officers working primarily in New York because it would "promote greater predictability" to allow VEREIT simply to designate Phoenix as essentially its chosen nerve center. (Opp. 12).

That is particularly true in light of the fact that, when it suited its purposes to do so, VEREIT made a different "choice." VEREIT cannot deny that before the District Court of Maryland, when VEREIT wanted a New York forum, it stated, "**key members of current management** . . . live in New York and perform *significant* management activities there." (*Id*. 15). Instead, it asks the Court to allow it to avoid that clear judicial assertion by claiming that it *only* meant to say that "**several** of VEREIT's **officers** reside and perform **certain managerial** duties in New York." (*Id*.). But that is not what VEREIT said, nor is it consistent with the doctrine of judicial estoppel.

Contrary to Plaintiff's contention (*Id*. 15), *Techno-TM, LCC v. Fireaway, Inc*, 928 F. Supp. 2d 694, 698 (S.D.N.Y. 2013), does not limit judicial estoppel to cases where a party asserts "directly opposite facts," in conflicting statements to a court. Rather, *Techno-TM* explained that judicial estoppel "prohibit[s] parties from deliberately *changing positions* according to the exigencies of the moment" and is "neither inflexible nor reducible to any general formulation of principle." *Id*. (emphasis added). In arguing that what it once characterized as "key members of current management" should only be considered as "some

members" or that the "significant management activities" were really only "certain managerial duties," VEREIT is changing positions on the nature of facts that have not changed. That is precisely the type of fast and loose alteration of argument and position which the doctrine of judicial estoppel was intended to bar.

### B. Jurisdictional Discovery is Warranted

Even if this Court finds the present record is insufficient to establish that VEREIT's principal place of business is in New York, Defendants should be permitted discovery prior to any finding to the contrary. Such discovery would be neither "futile" nor "a waste of the parties' resources" as VEREIT claims (Opp. 15). Rather, it would be necessary to resolve factual issues raised by the VEREIT opposition itself, including the conflict between Mr. Bartolotta's current employment agreement, which lists him as residing in and working primarily out of New York,[10] and Ms. Goldberg's (notably, not Mr. Bartolotta's) assertion that he relocated to Arizona at some undisclosed time. It is also necessary to give meaning to Ms. Goldberg's vague statements that certain of the relevant individuals spend "a majority" of their time outside of New York or the nature of the activities conducted here, where they reside and maintain their offices, as opposed to in other locations. Without such discovery, the broad and conclusory statements of the Goldberg Affidavit are not entitled to be taken at face value.

### II. THIS ACTION SHOULD BE STAYED OR DISMISSED IN FAVOR OF THE MORE COMPREHENSIVE AND ADVANCED DELAWARE ACTION

Plaintiff's wholesale proposition that the typical abstention analysis is "swallowed" by "questionable personal jurisdiction" (*Id*. 17) is an odd argument given that this Court's jurisdiction over the present dispute is equally in question and VEREIT itself opted to cause its

---

[10] Exhibit 2.

operating partnership to file a New York state court action to determine parallel advancement and indemnification obligations that are owed. Moreover, that operating partnership will also be responsible for all money VEREIT is obligated to pay. Thus, by bifurcating lawsuits between federal and state court, VEREIT itself concedes that this Court can resolve only a fraction of the entire controversy among the parties. In sharp contrast, the Delaware court can resolve the entire controversy.

Furthermore, VEREIT's position is not supported by the case law it cites. For example, in *Adolph Coors Co. v. Davenport Mach. & Foundry Co.*, the federal court's "special scrutiny" followed an affirmative ruling by the state court that it did not have jurisdiction over the plaintiff. 89 F.R.D. 148, 151 (D. Colo. 1981). Here, the Delaware Court has not ruled that it lacks jurisdiction over VEREIT, so the same special consideration is not in play.

In *ASC Utah, Inc. v. Wolf Mountain Resorts, L.C.*, one of the parties was not before the state court, while the other necessary party had moved to dismiss. 2009 WL 2857885, at *4 (D. Utah Aug. 27, 2009). The federal court decided it could best settle the controversy, considering that all necessary parties were before it and "it is *undisputed* that [the] court has jurisdiction over all three." *Id*. Here, the Delaware state action is not missing a necessary party, and there is a dispute as to whether this Court has jurisdiction. Thus, the same special considerations are not at play.

Finally, in *Camico Mutual Ins. Co. v. J.D. Rosen C.P.A., P.A.*, the federal court looked at whether the state court likely had personal jurisdiction "for purposes of considering the *Brillhart* factors," not completely displacing them. 2017 WL 3839412, at *2 (D. Kan. Sept. 1, 2017). While a consideration of whether VEREIT is subject to jurisdiction in Delaware may be appropriate for this Court's analysis, it should not be dispositive. Moreover, the Delaware Court

7

currently has under advisement whether it has jurisdiction over VEREIT and indicated it would rule on the jurisdictional argument soon.

The other *Wilton-Brillhart* factors support staying or dismissing this action in favor of the Delaware Action. First, Plaintiff concedes that the Delaware Action is broader in scope, stating after its "motion to dismiss or stay the Delaware Action is decided, this action may be more comprehensive than the Delaware Action." (Opp. 19). Additionally, the Delaware Action is more advanced—as the substantive issue of advancement has already been presented on summary judgment to the court at a hearing on November 21, 2017. The Delaware Court is poised to determine its jurisdiction over VEREIT, and if the Court determines it has such jurisdiction, the Delaware Action would completely settle the controversy. Moreover, because there is no issue of federal law, there is no policy reason favoring this Court to resolve the dispute over the Delaware Court. *See, e.g. Fed. Insurance Co. v. Garner*, 2016 WL 3554929, at *4 (S.D.N.Y. June 20, 2016) (DAB). While Plaintiff asserts that this factor does not weigh much where the state and federal court are "equally capable of applying settled state law," (Opp. 20), Plaintiff ignores the fact that Maryland courts routinely defer to Delaware law in advancement actions. *See Kramer v. Liberty Prop. Trust*, 968 A.2d 120, 134 (Md. 2009). Thus, the Delaware Court is uniquely situated to resolve any issues of Maryland law.

Finally, the authority the Plaintiff cites in support of its contention that this Court is better situated to decide the present dispute is inapposite. In *American Motorists Ins. Co. v. Glidden Co.*, the underlying action before the state court that the federal court deferred to was another indemnity action—not one of the actions giving rise to the plaintiffs' request for indemnification. 129 F. Supp. 2d 640, 641 (S.D.N.Y. 2001). While this Court is certainly familiar with underlying proceedings against both Plaintiff and Defendants, the precise indemnification

8

agreements and advancement obligations have not yet been before this Court, and can just as fairly be adjudicated in the Delaware Action, which is more comprehensive and further advanced.

## CONCLUSION

For the forgoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Complaint for lack of subject matter jurisdiction, or stay the action to permit jurisdictional discovery. Alternatively, Defendants respectfully request that this Court dismiss or stay Plaintiff's Complaint in favor of the Delaware Action pursuant to *Brillhart* and its progeny.

Dated: December 1, 2017

Respectfully submitted,

*/s/ Robin L. Cohen*
Robin L. Cohen
New York Bar No.: 2254019
rcohen@mckoolsmith.com
Natasha Romagnoli
New York Bar No. 3040334
nromagnoli@mckoolsmith.com
Elizabeth Sherwin
New York Bar No. 1998228
esherwin@mckoolsmith.com
**MCKOOL SMITH, P.C.**
One Bryant Park, 47th Floor
New York, New York 10036
Telephone: (212) 402-9400
Facsimile: (212) 402-9444

**ATTORNEYS FOR DEFENDANTS**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on December 1, 2017.

*/s/ Robin L. Cohen*
Robin L. Cohen