THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **VEREIT, Inc.,**<br><br>　　　　　　　**Plaintiff,**<br><br>　　v.<br><br>**Nicholas S. Schorsch, Peter M. Budko, William M. Kahane, and Edward M. Weil,**<br><br>　　　　　　　**Defendants.** | Civil Action No. 17-cv-6546<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO COMPEL INTERROGATORY RESPONSES**

Pursuant to Fed. R. Civ. P. 37(a), Defendants Nicholas S. Schorsch, Peter M. Budko, William M. Kahane, and Edward M. Weil (collectively, the "Individuals"), by and through their undersigned counsel, hereby submit this memorandum of law in support of the Individuals' motion to compel Plaintiff VEREIT, Inc. ("VEREIT") to comply with this Court's May 11, 2018 Order Regulating Discovery (Dkt. No. 40) and directing VEREIT to respond to the Individuals' Interrogatories, served on May 25, 2018.[1]

**PRELIMINARY STATEMENT**

Pursuant to the Court's clear directive ordering VEREIT's participation in jurisdictional discovery, the Individuals drafted twenty limited, specific interrogatories directly calculated to uncover relevant information about VEREIT's "nerve center" – the relevant test for purposes of diversity jurisdiction. In response, VEREIT has refused to fully answer four of the Individuals'

---

[1] Pursuant to Local Rule 5.1, copies of Defendants' Interrogatories to Plaintiff and VEREIT Inc.'s Responses and Objections to Defendants' Interrogatories to Plaintiff are attached respectively as Exhibits A and B.

1

Interrogatories and has objected in substantial part to an additional eight interrogatories. Thus, over half of VEREIT's responses are deficient. For example, VEREIT has failed to respond to an interrogatory which sought to determine the reasons for VEREIT's decision to designate its "headquarters" in Arizona, as well as to an interrogatory seeking to discover whether key members of VEREIT's management team have dedicated office space in New York. Further, VEREIT has also refused to provide information prior to January 1, 2017, despite the fact that such information could reveal whether VEREIT's assertion that its principal place of business is in Arizona is illusory. There is no basis for VEREIT to withhold this relevant information – and certainly not on the basis that such requests are burdensome. Moreover, in many instances, VEREIT has simply provided publicly available information that was already addressed in the parties' briefing or offered superficial responses.

VEREIT's boilerplate objections about burden and relevance are nothing more than thinly veiled attempts to avoid disclosing information that will assist the Individuals in establishing that VEREIT's principal place of business is in New York. But in any event, VEREIT's refusal to answer these interrogatories, whatever those answers may prove, is in direct contravention of this Court's order and the relevant federal rules and cases governing discovery.

## FACTUAL BACKGROUND

VEREIT relies solely on diversity of citizenship pursuant to 28 U.S.C. § 1332 for its assertion that this Court has jurisdiction over this action. However, at least one of the Defendants, Edward M. Weil, is a citizen of New York[2] and VEREIT has represented to another federal court just a few months before it commenced this action that members of VEREIT's management "perform significant management activities from VEREIT's offices in New York"

---

[2] *See* Dkt. No. 5 at ¶ 9.

and New York is "where VEREIT's corporate officers live, work, and 'direct, control, and coordinate' VEREIT's activities." *See* Defendants' Memorandum in Support of Motion to Dismiss or Stay (Dkt. No. 17) at 3-4 (citing Mem. of Law of Nominal Def. and Certain Individual Defs.' Motion to Transfer Venue or, in the Alternative, Stay the Action at 21, *Meloche v. Schorsch*, No. 1:16-cv-03366-ELH (D. Md. Mar. 24, 2017), ECF No. 72-1). Having parroted in another federal action the standard set forth in *Hertz Corp. v. Friend*, 599 U.S. 77, 92-93 (2010) to establish that the "nerve center" of VEREIT's operations was New York (when it was advantageous to VEREIT to deem itself a New York corporation), VEREIT now disputes those same facts in this case (when it is no longer advantageous for it to be a New York corporation). *See, e.g.*, Dkt. No. 23 (Dec. of Lauren Goldberg in Support of VEREIT's Memorandum of Law in Opposition to Defendants' Motion to Dismiss or Stay) at 4-5. As a result of VEREIT's about-face on the location of its "nerve center", jurisdictional discovery is now necessary to assist in resolving this critical issue of whether the Court has jurisdiction over this case. As part of that jurisdictional discovery, the Court ordered the Individuals to serve interrogatories on VEREIT in advance of two depositions of "persons who know *all the affairs of the company* and manage *all respects of those affairs*." Dkt. No. 40 (Order Regulating Discovery). The Court warned VEREIT that the Interrogatories "must be answered – don't give me the boilerplate objections," ordering the VEREIT representative answering the Interrogatories "not to just give me perfunctory answers. I want you to look into it and make sure that you stand behind all of the assertions." (May 11, 2018 Conf. Tr. at 12, attached as Exhibit C.).

VEREIT has fallen far short of complying with the Court's Order. Of the twenty targeted interrogatories that the Individuals served, VEREIT has responded in full to less than half:

VEREIT completely refused to answer four interrogatories and offered only partial answers to another eight.  Moreover, in many instances, VEREIT has responded with publicly available information of which the Individuals were already aware, leaving the Individuals with hardly any more information than they had prior to the commencement of discovery.[3]  VEREIT has also refused to provide information prior to January 1, 2017.

VEREIT's refusal to answer these interrogatories or provide adequate responses is based entirely on its objections that interrogatories such as "[i]dentify any contracts that VEREIT entered into between January 2014 and August 29, 2017, that were negotiated in New York, executed in New York, contained a New York choice of law and/or New York forum provision, and/or required notice under the contract to be sent to VEREIT's New York office" are "irrelevant to a determination of VEREIT's principal place of business," or that other interrogatories, such as "[s]tate all of the reasons why VEREIT decided to designate its 'headquarters' in Camelback, Arizona[,]" are "unduly burdensome to obtain" and therefore "not proportionate to the needs of the case."  To the contrary, each of the Individuals' interrogatories sought to elicit information probative of VEREIT's principal place of business.  Further, the interrogatories pose a minimal and proportionate burden on VEREIT, particularly in light of the millions of dollars at stake in this litigation.

On June 21, 2018, counsel for the Individuals conferred with VEREIT's counsel and offered to compromise on the time period for responding to the Interrogatories (narrowing it from 2014-17 to 2015-17).  However, VEREIT refused to change its position and insisted that it

---

[3] Despite VEREIT's purported concern that its time not be wasted by these depositions (*see* Dkt. No. 41), its failure to substantively answer the majority of the interrogatories all but guarantees that counsel for the Individuals will have to spend more time at the depositions trying to elicit this basic information that VEREIT should have already provided, and possibly cause the depositions to be held open until the witnesses are prepared to come back with the requested information.

would not provide any information prior to January 1, 2017. In addition, VEREIT refused to reconsider or compromise on any of its other objections or refusals to answer.[4]

## ARGUMENT

Discovery under the federal rules is broad. Fed. R. Civ. P. 26(b)(1) states that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ." Information is relevant so long as it is reasonably calculated to lead to the discovery of admissible evidence. *See Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991). It is not grounds for an objection that the information sought will be inadmissible so long as the requested material could lead to other information that may be relevant to the subject matter of the action and "[t]his obviously broad rule is liberally construed." *Id.* (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (relevance under rule 26(b)(1) is broadly construed "to encompass any matter that bears on, or that *reasonably could lead* to other matter that could bear on, any issue that is or may be in the case") (emphasis added).[5] There is no exception to this standard for jurisdictional discovery. *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, No. 14CV8445, 2017 WL 2491999, at *2 (S.D.N.Y. May 15, 2017) (permitting a jurisdictional discovery request which, although "broad," was "reasonably tailored to elicit information" regarding jurisdiction).

---

[4] *See* Certificate of Conference at the conclusion of this motion.

[5] *Accord Maresco v. Evans Chemetics,* 964 F.2d 106, 114 (2d Cir. 1992) ("the scope of discovery under Fed. R. Civ. P. 26(b) is very broad"); *Paper Corp. of the United States v. Schoeller Tech. Papers*, 759 F. Supp. 1039, 1048 (S.D.N.Y. 1991) ("the phrase 'relevant to any subject matter involved in the pending action' has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case'") (quoting *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)); *Morse/Diesel, Inc. v. Fidelity & Deposit Co.*, 122 F.R.D. 447, 449 (S.D.N.Y. 1988) ("reasonably calculated" means "any possibility that the information sought may be relevant to the subject matter of the action").

Discovery in this context is relevant if it bears on issues of a corporation's citizenship. For purposes of diversity jurisdiction, a corporation is a citizen of any state in which it is incorporated ***and*** the state where it has its principal place of business.  28 U.S.C. § 1332(a)(1).  A corporation only has one principal place of business, which the United States Supreme Court has established is determined by the "nerve center" test.  *Hertz Corp. v. Friend*, 599 U.S. 77, 92-93 (2010).  A corporation's principal place of business is not necessarily its declared headquarters, if that is not the "nerve center," *i.e.*, "the place where a corporation's officers direct, control, and coordinate the corporation's activities."  *Id*.  The nerve center is determined by "where a corporation's 'high-level' decisions are made, not where day-to-day activities are managed."  *St. Paul Fire & Marine Ins. Co. v. Scopia Windmill Fund, LP*, 87 F. Supp. 3d 603, 605 (S.D.N.Y. 2015) (citation omitted); *see also Cofimco USA, Inc. v. Mosiewicz*, 2016 WL 1070854, at *3 (S.D.N.Y. Mar. 16, 2016).

However, as this Court has acknowledged, "the nerve center test is neither . . . clear-cut nor . . . simple to determine. . . ."  *St. Paul*, 87 F. Supp. 3d at 605.  As the nerve center test is a fact-intensive inquiry, this Court should compel VEREIT to fully answer these tailored interrogatories, which seek to elicit facts that bear directly on the question of jurisdiction and will permit this Court to accurately assess whether it may exercise jurisdiction over this action.

      **A.**     **VEREIT Has Improperly Refused to Provide Information Prior to the Year in Which it Filed this Lawsuit**

The Individuals requested that VEREIT provide information bearing on jurisdiction dating back to 2014, in order to elucidate what—if anything—changed between when VEREIT's headquarters were admittedly located in New York, to when it purportedly changed its headquarters to Arizona in 2015, to its averment in March 2017 that it performed "significant management activities" in New York.

Notwithstanding this reasonable timeframe, VEREIT refused to answer most of Interrogatory No. 1 and all of Interrogatory No. 2 which inquired as to the reasons for VEREIT moving its self-designated headquarters from New York to Arizona in 2015 and the individuals involved in that decision.  VEREIT also refused to provide information prior to January 1, 2017 in response to Interrogatories 10, 14, 18, 19, and 20, which sought relevant information relating to: (1) the state of residency of key members of VEREIT's management team (Interrogatory No. 10), (2) the amount of time spent by members of VEREIT's management team in Arizona and the purpose of any such trips (Interrogatory No. 14), (3) the identity of VEREIT's board of directors, the state(s) of their residency, and the amount of time spent working on issues related to VEREIT in New York versus Arizona and a description of that work (Interrogatory No. 18), (4) the amount of time spent by members of VEREIT's board of directors in Arizona and the duration and purpose of any such trips (Interrogatory No. 19), and (5) the formal meetings attended by members of VEREIT's board of directors, the means of participation, and the location of the individual board member at the time of such participation (Interrogatory No. 20).

While VEREIT is correct that the "nerve center" test examines a party's principal place of business at the time of filing, VEREIT's executives' activities before 2017 are discoverable as they may lead to relevant evidence regarding when—if ever—VEREIT actually shifted its main executive functions to Arizona, and comparing what—if anything—has changed since VEREIT was first headquartered in New York, to when it moved its headquarters to Arizona in 2015, to how it operated its business in 2017, when VEREIT claimed in one federal litigation that its officers conducted significant activities in New York, and then disavowed that statement in this litigation.  Information from these different time periods may shed light on whether the position VEREIT has taken in this litigation with respect to its principal place of business is unsupported

by the reality of how its officers have managed the company for the past several years.  Indeed, VEREIT's responses to these interrogatories would reveal the motivations for designating Arizona as VEREIT's headquarters and may lead to the discovery of evidence suggesting that this designation was motivated by factors other than moving the actual center of control of the corporation.

Additionally, VEREIT's responses to these interrogatories could facilitate more pointed questions at the Court-ordered depositions scheduled for July. VEREIT should be compelled to answer these interrogatories with information for the entire requested time period.

> **B.   VEREIT Has Improperly Refused to Answer Interrogatories that Directly Bear on the Question of Where its Officers Direct, Control and Coordinate VEREIT's Activities**

VEREIT has also refused to answer interrogatories, or material portions of interrogatories, that seek information concerning where its officers direct, control and coordinate VEREIT's activities.  Considering that this Court has already ordered VEREIT to produce two witnesses "who know *all the affairs of the company* and manage *all respects of those affairs*," these interrogatories are hardly "irrelevant to a determination of principal place of business" or "unduly burdensome."  Specifically, VEREIT has refused to answer all or material portions of interrogatories seeking information relating to: (1) where the lease pertaining to VEREIT's New York office space was negotiated and who signed the lease on behalf of VEREIT (Interrogatory No. 4), (2) whether key members of VEREIT's management team had dedicated office space in Arizona or New York (Interrogatory No. 9),[6] (3) any property that a key member of VEREIT's management team resided in, owned or rented (Interrogatory No. 11), and (4) any contracts

---

[6] Contrary to VEREIT's assertion, the Individuals did not seek the production of documents by this interrogatory.  VEREIT could have easily provided the requested information in the context of an interrogatory response.

8

entered into by VEREIT that were negotiated and executed in New York, or contained a New York choice of law and/or New York forum provision (Interrogatory No. 16).

These interrogatories seek discoverable information relating to matters that bear directly on whether VEREIT's principal place of business is New York and are narrowly tailored to that purpose. Indeed, if VEREIT representatives are negotiating and signing contracts and leases in New York, it suggests that VEREIT's actual center of control and coordination is in New York. Similarly, if VEREIT's high-level executives own or lease homes in New York and occupy office space in VEREIT's New York office, those facts support a finding that New York is VEREIT's nerve center. At the very least, this information is reasonably calculated to lead to evidence that is probative of jurisdiction.

VEREIT should be compelled to fully answer these interrogatories.

### C. VEREIT Provided Answers to Critical Interrogatories That Are No More Informative than Publicly Available Information and/or Fail to Adequately Respond to Those Interrogatories

VEREIT has also answered numerous interrogatories in a superficial manner, relying on publicly available information, and failing to answer the portions of the interrogatories that would require a more meaningful response and actually shed light on its principal place of business. For example, Interrogatory No. 5 seeks information relating to key members of VEREIT's management team, including those members' "title, position, and role at VEREIT." In response, VEREIT identified these individuals by name and provided their titles, but provided no further information regarding their roles at VEREIT. The role played by these individuals, however, is critical to whether VEREIT's principal place of business is, in fact, New York. Similarly, Interrogatory No. 6 asks VEREIT to describe the "significant management activities" performed by key members of VEREIT's management team. In response, VEREIT listed the key members of its management team and the general areas they oversee, but did not describe

any actual management activities performed by these individuals. For instance, in response to this interrogatory, VEREIT simply asserted that "Mr. Rufrano manages and overseas operations at VEREIT." This is not an adequate description of the significant management activities performed by Mr. Rufrano. Instead of providing this critical information, VEREIT instead devotes the majority of its response to a description of the location of the employees who report to these key members of management - information that is not responsive to the interrogatory.

Similarly, Interrogatory No. 14 asks VEREIT to identify trips taken by certain members of VEREIT's management team to Arizona and the "general purpose of their trip." Although VEREIT's response identifies the dates of those trips and the number of days worked, VEREIT does not identify the purpose of those trips, despite the fact that this information is central to the question of whether these individuals actually performed managerial activities during their trips to Arizona. VEREIT offered a similarly deficient response to Interrogatory No. 19, which sought the same type of information as Interrogatory No. 14 but focused on VEREIT's board of directors. Relatedly, Interrogatory No. 18 requests that VEREIT identify the members of VEREIT's board of directors and provide information relating to the state of their residency, the amount of time spent each year working on issues relating to VEREIT, a description of that work, and how much time was spent working on issues relating to VEREIT in New York versus Arizona. VEREIT responded by identifying members of VEREIT's board of directors and the dates of their service but provided no information regarding the work performed by these individuals, where that work was performed, or where these individuals reside. VEREIT also limited its response to this interrogatory to 2017. All of these interrogatories seek information that is relevant to the issue of VEREIT's principal place of business and are not unduly burdensome.

10

## **CONCLUSION**

VEREIT's responses fail to meaningfully respond to over half of the Individuals' interrogatories. Instead, VEREIT has withheld information that is highly probative of whether its principal place of business is actually New York. Further, VEREIT has improperly restricted its answers to a narrow time frame, which deprives the Individuals and the Court of the ability to determine what, if anything, changed between when VEREIT purportedly moved its headquarters to Arizona in 2015, VEREIT's averment that New York is "where VEREIT's corporate officers live, work, and 'direct, control, and coordinate' VEREIT's activities," and the filing of this action mere months later.

For the foregoing reasons, Defendants respectfully request that the Court compel Plaintiff to fully answer Defendants' Interrogatories in advance of the depositions of the two VEREIT officers who are knowledgeable about the management and affairs of VEREIT.

Dated:  June 26, 2018    Respectfully submitted,

*/s/ Robin L. Cohen*
Robin L. Cohen
New York Bar No.: 2254019
rcohen@mckoolsmith.com
Natasha Romagnoli
New York Bar No. 3040334
nromagnoli@mckoolsmith.com
**MCKOOL SMITH, P.C.**
One Bryant Park, 47th Floor
New York, New York  10036
Telephone:  (212) 402-9400
Facsimile:  (212) 402-9444

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF CONFERENCE**

I hereby certify that on June 21, 2018, I conferred with VEREIT's counsel and we were unable to resolve this dispute. I offered to compromise on the time period for responding to the Interrogatories (narrowing it from 2014-17 to 2015-17) but VEREIT refused to change its position that it would not provide any information prior to January 1, 2017. In addition, VEREIT refused to reconsider or compromise any of its other objections or refusals to answer.

*/s/ Natasha Romagnoli*
Natasha Romagnoli

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on June 26, 2018.

*/s/ Natasha Romagnoli*