# EXHIBIT B

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VEREIT, Inc.,<br><br>                              Plaintiff,<br><br>     v.<br><br>Nicholas S. Schorsch, Peter M. Budko,<br>William M. Kahane, and Edward M. Weil,<br><br>                              Defendants. | Civil Action No.: 1:17-cv-06546-AKH |

## VEREIT INC.'S RESPONSES AND OBJECTIONS TO DEFENDANTS' INTERROGATORIES TO PLAINTIFF

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure (the "Federal Rules") and the Joint Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules"), Plaintiff VEREIT, Inc., formerly known as American Realty Capital Properties, Inc. ("VEREIT" or the "Company"), submits its responses and objections (the "Responses and Objections") to Defendants' Interrogatories to Plaintiff (the "Interrogatories" and each one an "Interrogatory") in the above-captioned action (the "Action") as follows:

## GENERAL RESPONSES AND OBJECTIONS

The following General Objections apply to each and every one of the Interrogatories propounded by Defendants and shall have the same force and effect as if set forth in full in each of the specific responses enumerated below.

1.     VEREIT objects to the Interrogatories, including any definitions or instructions therein, to the extent they seek to impose obligations on VEREIT beyond those imposed by the Federal Rules, the Local Rules, or any other applicable rule or law.

2. VEREIT objects to the Interrogatories, including any definitions and instructions therein, to the extent they seek information protected from discovery by the attorney-client privilege, the attorney work product doctrine, common interest privilege, or any other applicable privilege or protection. Inadvertent production of any such information is not intended to be, and shall not operate as, a waiver of any applicable privilege or protection, in whole or in part.

3. VEREIT objects to the Interrogatories, including any definitions and instructions therein, to the extent they purport to require VEREIT to conduct anything other than a reasonably diligent search for responsive information. In responding to the Interrogatories, and subject to the General Objections and the Specific Objections contained herein, VEREIT will make a reasonable inquiry and conduct a reasonable search of information and materials.

4. VEREIT reserves all objections with respect to the relevance, materiality, contents, and/or admissibility of all information provided pursuant to the Interrogatories. Nothing contained herein, or in any future response to the Interrogatories, shall be deemed an admission, concession, or waiver by VEREIT as to the validity of any claim asserted by VEREIT in the Action. These Responses and Objections are made without waiver of, or prejudice to, any objection or right, including but not limited to VEREIT's right to object to further discovery of VEREIT and VEREIT's right to move for a protective order on any grounds.

5. VEREIT objects to the Interrogatories, including any definitions and instructions therein, to the extent they request information from before August 28, 2017—the date of the filing of the Complaint in the Action—on the grounds that such information is irrelevant, and conducting a search for responsive information would be unduly burdensome and disproportionate to the needs of the case because the principal place of business of a corporation

is determined as of the date of the commencement of an action.  Notwithstanding this objection, and subject to the General Objections and the Specific Objections contained herein, VEREIT will provide responsive information for the period from January 1, 2017 through August 28, 2017.

6.      VEREIT objects to the Interrogatories, including any definitions and instructions therein, to the extent that the Interrogatories request information that is irrelevant to the determination of VEREIT's principal place of business.

7.      VEREIT objects to the instruction in paragraph 8 of the Interrogatories on the grounds that it is unduly burdensome to the extent it seeks to require VEREIT to provide information outside of VEREIT's possession, custody, or control and information that VEREIT cannot ascertain through a reasonably diligent search for responsive information.

8.      VEREIT objects to the instruction in paragraph 11 of the Interrogatories to the extent it relies on the law not applicable in this Court.

9.      No objection or limitation, or lack thereof, made herein shall be deemed an admission by VEREIT as to the existence or nonexistence, or availability or unavailability, of information that may be responsive to the Interrogatories.  Similarly, any undertaking to provide and/or preserve information pursuant to any particular Interrogatory—now or at a future date—shall not be construed to indicate that any such information exists.

## SPECIFIC RESPONSES AND OBJECTIONS

The foregoing General Responses and Objections are incorporated by reference into each specific Response and Objection below as if fully repeated therein.  By answering any specific Interrogatory, VEREIT is not, nor shall it be construed as, admitting to the propriety of any specific Interrogatory or that any information responsive to an Interrogatory exists.  VEREIT reserves the right to supplement, amend, or modify these specific responses, through the provision

3

of additional discovery or otherwise, if necessary, based on continuing investigation and analysis

of this matter.  Consistent with the Court's instructions at the status conference on May 11, 2018

("May 11, 2018 Status Conference), VEREIT limits its objections below to those absolutely

necessary for an explanation as to the information, if any, that it is willing to provide.  VEREIT

specifically responds and objects to the Interrogatories as follows:

**Interrogatory No. 1:**

      Identify the date on which VEREIT designated Camelback, Arizona as its "headquarters," including listing the individuals who were involved in high-level management discussions leading up to the decision to designate the "headquarters" in Arizona, and the individuals or governing body who authorized or voted to approve the designation.

**Response to Interrogatory No. 1:**

      Subject to and without waiving the foregoing General Objections, VEREIT states

that it designated its office at 2325 E. Camelback Road in Phoenix, Arizona as its headquarters

and principal executive office on or about January 20, 2015.  VEREIT will not provide information

responsive to the remainder of this Interrogatory on the grounds that the information sought is

irrelevant to a determination of VEREIT's principal place of business.

**Interrogatory No. 2:**

      State all of the reasons why VEREIT decided to designate its "headquarters" in Camelback, Arizona.

**Response to Interrogatory No. 2:**

      VEREIT objects to this Interrogatory in its entirety on the grounds that the

Interrogatory seeks information that is irrelevant to a determination of VEREIT's principal place

of business, is unduly burdensome to obtain to the extent it requests "all of the reasons" why

VEREIT decided to designate its headquarters in Phoenix, Arizona, and is not proportional to the

needs of the case.  VEREIT will not provide information responsive to this Interrogatory.

4

**Interrogatory No. 3:**

Identify the number of people that VEREIT employed in New York in each of the years between 2014 and 2017, and state their names and titles and/or positions.

**Response to Interrogatory No. 3:**

Subject to and without waiving the foregoing General Objections, VEREIT states that as of January 1, 2017, VEREIT employed 18 individuals located in the New York office. Attached as Exhibit A is a list of those employees.  Fifteen of these individuals were still located in the New York office at the time of the filing of the Complaint in the Action on August 28, 2017.

**Interrogatory No. 4:**

For each of the years between 2014 and 2017, identify the location of VEREIT's New York office(s), whether VEREIT owned or rented the office space in each year, the approximate square footage of office space in New York that was owned or leased each year, and for any leases, the term of the lease, when and where the lease was negotiated, and who on behalf of VEREIT signed the lease.

**Response to Interrogatory No. 4:**

VEREIT objects to this Interrogatory on the grounds that the Interrogatory seeks information that is irrelevant to the determination of VEREIT's principal place of business, is unduly burdensome to obtain, and is not proportional to the needs of the case.

Subject to and without waiving the foregoing General Objections and specific objections, VEREIT states that throughout 2017, VEREIT's New York office was located at 5 Bryant Park, 23rd Floor, New York, NY 10018.  VEREIT rents this office space, which consists of approximately 12,750 square feet.  The original lease was entered into by CapLease, Inc. in or about April 2006, and was assumed by a wholly owned subsidiary of VEREIT as of November 5, 2013.  VEREIT will not provide information responsive to the remainder of this Interrogatory on the grounds set forth above.

**Interrogatory No. 5:**

Identify each and every one of the

"key members of current management, including VEREIT's Chief Executive Officer, Chief Financial Officer, and General Counsel [who] live in New York and perform significant management activities there"

as referenced on page 21 of VEREIT's Memorandum of Law of Nominal Defendant and Certain Individual Defendants' Motion to Transfer Venue, or in the Alternative, Stay the Action, filed in *Meloche v. Schorsch*, No. 1:16-cv-03366-ELH (D. Md. Mar. 24, 2017), ECF No. 72-1 (the "VEREIT Memo"), and state each person's title, position and role at VEREIT at the time, and whether each of the individuals held that same title, position, and role at VEREIT as of August 2017 when VEREIT filed the instant action, and if not, describe any changes.

**Response to Interrogatory No. 5:**

Subject to and without waiving the foregoing General Objections, VEREIT states that the key members of management referenced in the VEREIT Memo are:  Glenn Rufrano, Chief Executive Officer; Michael Bartolotta, Chief Financial Officer; Lauren Goldberg, General Counsel; and Paul McDowell, Chief Operating Officer.  Each of these four individuals held the same role as of the commencement of the Action on August 28, 2017.

**Interrogatory No. 6:**

Describe the "significant management activities" that each of the individuals identified in response to Interrogatory No. 5 performed as of the date of VEREIT's Memo and the Declaration of Lauren Goldberg in Support of Nominal Defendant and Certain Individual Defendants' Motion to Transfer Venue, or in the Alternative, Stay the Action, dated March 24, 2017 (the "Goldberg Affidavit"), and describe how, if at all, each individuals' responsibilities and management activities changed between March 24, 2017 and August 29, 2017, when VEREIT filed the complaint in this action.

**Response to Interrogatory No. 6:**

VEREIT objects to this Interrogatory on the grounds that it is unduly burdensome and disproportionate to the needs of the case to the extent it requests that VEREIT describe *all* "significant management activities" that each of the individuals performed.

Subject to and without waiving the foregoing General Objections and specific objections, VEREIT states that Mr. Rufrano manages and oversees the operations of VEREIT. Mr. Bartolotta oversees the accounting, external reporting, financial planning & analysis, treasury and IT functions.  As of the filing of the Complaint in the Action, all but one of the employees who reported to Mr. Bartolotta resided and worked in Arizona and nearly the entire back-office departments, including accounting, financial planning & analysis, information technology and facilities operated from Arizona.  Ms. Goldberg oversees the Company's legal department, risk management and compliance.  As of the filing of the Complaint in the Action, all but one of the employees who reported directly to Ms. Goldberg, along with all of the remaining legal, risk management and compliance employees, resided and worked in Arizona.  Mr. McDowell oversees and manages the Company's asset management, property management, construction management, underwriting, credit analysis and leasing areas.  As of the filing of the Complaint in the Action, four of the seven employees who reported directly to Mr. McDowell worked in Arizona.  The vast majority of the remaining employees who worked under Mr. McDowell were also primarily located in Arizona.  The basic duties and responsibilities of Mr. Rufrano, Mr. Bartolotta, Ms. Goldberg and Mr. McDowell did not change between March 24, 2017 and August 28, 2017.  The only significant change during this period was Mr. Bartolotta's move from New York to Phoenix in August 2017.

**Interrogatory No. 7:**

Identify any errors, misstatements or incorrect/inaccurate descriptions that are contained in the Goldberg Affidavit, as of the date that the Goldberg Affidavit was filed, whether known at the time or discovered later.

**Response to Interrogatory No. 7:**

        Subject to and without waiving the foregoing General Objections, VEREIT states that it was not and is not aware of any errors, misstatements or inaccuracies in the Goldberg Affidavit as of the date it was filed, whether known at the time or discovered later.

**Interrogatory No. 8:**

        Specifically describe and state the date of each and every circumstance, occurrence or change that occurred between March 25, 2017 and August 29, 2017, if any, that caused the statements in the VEREIT Memo or the Goldberg Affidavit to no longer be accurate, correct or truthful at the time that VEREIT filed this lawsuit.

**Response to Interrogatory No. 8:**

        Subject to and without waiving the foregoing General Objections, VEREIT states that the only significant change during this period was Mr. Bartolotta's move from New York to Phoenix in August 2017.

**Interrogatory No. 9:**

        For each of the years between 2014 and August 29, 2017, provide a diagram of VEREIT's office spaces in both Camelback and New York and mark on the diagram the dedicated physical offices of the individuals identified in response to Interrogatory No. 5, or their predecessors who held the same position, title or role.

**Response to Interrogatory No. 9:**

        VEREIT objects to this Interrogatory in its entirety on the grounds that the information sought is irrelevant to a determination of VEREIT's principal place of business, that the Interrogatory is improper under Rule 33 of the Federal Rules of Civil Procedure to the extent it seeks the production of documents, and prohibited by the Court's oral ruling at the May 11, 2018 Status Conference denying Defendants' request for document discovery. VEREIT will not provide information responsive to this Interrogatory.

**Interrogatory No. 10:**

For each of the individuals identified in response to Interrogatory No. 5 for each of the years 2014 through August 29, 2017, identify the state of the individual's residency (including whether it changed at some point during a particular year), the state in which they were registered to vote, the state that issued their driver's license or other state-issued identification, and each state in which they filed a tax return, and the reason why they were required to file a tax return in that particular state.

**Response to Interrogatory No. 10:**

VEREIT objects to this Interrogatory on the grounds that the Interrogatory seeks information that is irrelevant to a determination of VEREIT's principal place of business, is unduly burdensome to obtain, and is not proportional to the needs of the case.

Subject to and without waiving the foregoing General Objections and specific objections, VEREIT states that in 2017, Glenn J. Rufrano was a resident of New York, was registered to vote in New York, and his driver's license was issued by the State of New York. Mr. Rufrano has not yet filed his tax return for the calendar year 2017; however, he intends to file returns in both New York and Arizona. Mr. Rufrano filed tax returns in New York and Arizona for the calendar year 2016. Prior to August 2017, Mr. Bartolotta was a resident of New York, was registered to vote there, and had a New York driver's license. He moved to Arizona in August 2017 and obtained an Arizona driver's license on August 21, 2017. He also registered to vote in Arizona on August 21, 2017. For the calendar year 2017, Mr. Bartolotta filed both New York and Arizona tax returns. In 2017, Ms. Goldberg was a resident of New York, was registered to vote in New York, and her driver's license was issued by the State of New York. For the calendar year 2017, Ms. Goldberg filed New York and Arizona tax returns. In 2017, Mr. McDowell was a resident of New York, was registered to vote in New York, and his driver's license was issued by the State of New York. Mr. McDowell has not yet filed his tax return for the calendar year 2017; however, he intends to file returns in both New York and Arizona. Mr. McDowell filed tax returns

9

in New York and Arizona for the calendar year 2016. With respect to all four individuals

referenced above, each filed an Arizona tax return because he/she earned income while working

in the State of Arizona.

**Interrogatory No. 11:**

For each of the individuals identified in response to Interrogatory No. 5, identify
every property (including houses and apartments) that they have resided in, inhabited, owned or
rented between January 2014 and August 29, 2017.

**Response to Interrogatory No. 11:**

VEREIT objects to this Interrogatory in its entirety on the grounds that the

Interrogatory seeks information that is irrelevant to the determination of VEREIT's principal place

of business and is not proportional to the needs of the case. VEREIT will not provide information

responsive to this Interrogatory.

**Interrogatory No. 12:**

Describe the details of Michael J. Bartolotta's relocation from New York to
Arizona, including the reasons for Mr. Bartolotta's relocation, the first date on which VEREIT
knew of Mr. Bartolotta's intended relocation, the actual date on which Mr. Bartolotta relocated,
and whether he: owned or rented a residence in New York prior to the relocation; sold or
terminated a lease on that New York residence upon relocating to Arizona (and the date of such
sale or termination); owns or rents a residence in Arizona (and the date on which he closed on a
purchase or signed a lease for the Arizona residence); continues to own any property or maintain
any residence or residential lease in New York, New Jersey, or Connecticut.

**Response to Interrogatory No. 12:**

Subject to and without waiving the foregoing General Objections, VEREIT states

that in approximately May 2016, Mr. Bartolotta decided to move from New York to Arizona. At

or about that time, Mr. Bartolotta advised the CEO of VEREIT of his intention and he began

looking for a house to purchase in Arizona. In February 2017, Mr. Bartolotta signed a contract to

purchase a home in Arizona, and he closed on the purchase in April 2017. After performing some

work on the new house, Mr. Bartolotta moved to Arizona in August 2017. The reason for the

decision to move was entirely personal. Before moving to Arizona, Mr. Bartolotta resided in

Warwick, New York, in a home he continues to own.

**Interrogatory No. 13:**

Explain the basis for and identify each document or metric that was relied upon to reach VEREIT's calculation, as set forth on page 8 of its Memorandum of Law in Opposition to Defendants' Motion to Dismiss or Stay ("VEREIT's Opposition") and paragraph 14 of the Declaration of Lauren Goldberg In Support of Plaintiff VEREIT, Inc.'s Memorandum of Law in Opposition to Defendants' Motion to Dismiss or Stay ("Second Goldberg Affidavit") that Glenn Rufrano spends 40% of his time in Arizona, Michael Bartolotta spent 40% of his time in Arizona prior to relocating from New York to Arizona, Paul McDowell spends approximately one-third of his time in Arizona, and Ms. Goldberg spends one-third of her time in Arizona, and the specific time period for which those calculations apply.

**Response to Interrogatory No. 13:**

Subject to and without waiving the foregoing General Objections, VEREIT states

that the information provided in the Second Goldberg Affidavit was based upon data obtained from

VEREIT's Human Resources Department and was calculated based upon estimated days each

executive spent in Arizona from January 1, 2017 through August 31, 2017.   The data was

preliminary data obtained from the Company's expense reimbursement system.   An analysis was

performed subsequent to the end of 2017, which included verifying with each executive's

administrative assistant the exact dates of each executive's trips according to his/her calendar.

Attached as Exhibit B is a list of each of those trips during the period January 1, 2017 through

August 28, 2017, and the corresponding percentage of total workdays for that period.

**Interrogatory No. 14:**

Identify each and every trip that Glenn J. Rufrano, Michael J. Bartolotta, Paul McDowell, Lauren Goldberg and William Miller, Jr. have made to Arizona since the earlier of when VEREIT hired them or VEREIT designated its headquarters in Arizona through August 29, 2017, including stating the dates on which they traveled to and from Arizona, the duration of each trip, where they stayed, the general purpose of their trip, and whether they submitted an expense report and/or sought reimbursement from VEREIT for their travel expenses.

11

**Response to Interrogatory No. 14:**

VEREIT objects to this Interrogatory on the grounds that the Interrogatory seeks information that is irrelevant to the determination of VEREIT's principal place of business, is unduly burdensome to obtain, and is not proportional to the needs of the case.

Subject to and without waiving the foregoing General Objections, Exhibit B hereto sets forth a list of each of the individuals' trips during the period January 1, 2017 through August 28, 2017, and the corresponding percentage of total workdays for that period.  VEREIT will not provide information responsive to the remainder of this Interrogatory on the grounds set forth above.

**Interrogatory No. 15:**

Identify each and every VEREIT director, officer, or other employee, including the individuals identified in response to Interrogatory No. 5, who had employment agreements between 2014 and August 29, 2017 that required them to work in New York and/or expressly contemplated that they would work primarily in New York or had to spend a specific percentage of their time in New York, and state the specific terms.

**Response to Interrogatory No. 15.**

Subject to and without waiving the foregoing General Objections, VEREIT states that Mr. Rufrano, Ms. Goldberg, Mr. Bartolotta, Mr. McDowell, and Mr. Miller are the only VEREIT directors, officers, or other employees who had employment contracts with VEREIT from January 1, 2017 to August 28, 2017 that required them to work in New York and/or expressly contemplated that they would work primarily in New York or had to spend a specific percentage of their time in New York.  The relevant specific terms of those employment contracts are as follows.

Mr. Rufrano's employment contract, dated as of March 10, 2015, provides as follows: "[Mr. Rufrano] shall work out of the Company's offices located in New York, and

Phoenix, Arizona; provided, however, that the Executive understands and agrees that reasonable travel may be required by the Company from time to time for business reasons, and that he may be required to spend significant time at the Company's offices in Phoenix."

Ms. Goldberg's employment contract, effective as of May 26, 2015, and as amended thereafter, Mr. Bartolotta's employment contract, effective as of October 5, 2015, and as amended thereafter, and Mr. McDowell's employment contract, dated February 23, 2016, and as amended thereafter, all provide as follows:  "You will work primarily out [of] the Company's offices in New York, New York, provided that you understand and agree that you may be required to spend significant time at the Company's offices in Phoenix, Arizona.  You may also be required to travel on Company business from time to time."

Mr. Miller's employment contract, dated February 23, 2016, provides as follows: "You will work out [of] the Company's offices in New York, New York, provided that you understand and agree that you will be required to spend significant time at the Company's offices in Phoenix, Arizona.  You will also be required to travel on Company business from time to time."

**Interrogatory No. 16:**

Identify any contracts that VEREIT entered into between January 2014 and August 29, 2017, that were negotiated in New York, executed in New York, contained a New York choice of law and/or New York forum provision, and/or required notice under the contract to be sent to VEREIT's New York office.

**Response to Interrogatory No. 16:**

VEREIT objects to this Interrogatory in its entirety on the grounds that the Interrogatory seeks information that is irrelevant to a determination of VEREIT's principal place of business, is unduly burdensome to obtain, and is not proportional to the needs of the case. VEREIT will not provide information responsive to this Interrogatory.

**Interrogatory No. 17:**

Identify each declaration or affidavit sworn to by any individual identified in response to Interrogatory No. 5 in connection with any litigation involving VEREIT, whether as a party or non-party, and provide the case name and index number of the litigation, and the location of said affiant at the time the affidavit was drafted and signed.

**Response to Interrogatory No. 17:**

Subject to and without waiving the foregoing General Objections, VEREIT states that the only declaration or affidavit sworn to by any individual identified in response to Interrogatory No. 5 in connection with any litigation involving VEREIT, whether as a party or non-party, from January 1, 2017 to August 28, 2017, is the Goldberg Affidavit.

**Interrogatory No. 18:**

Identify each member of VEREIT's board of directors from 2014 through August 29, 2017, including the dates of their service, the state of their residency, the amount of their time spent each year working on issues related to VEREIT, a description of that work for each year, and how much time working on issues related to VEREIT was spent in New York versus Arizona.

**Response to Interrogatory No. 18:**

VEREIT objects to this Interrogatory on the grounds that the Interrogatory seeks information that is irrelevant to the determination of VEREIT's principal place of business, is unduly burdensome to obtain, and is not proportional to the needs of the case.

Subject to and without waiving the foregoing General Objections and specific objections, VEREIT states that as of January 1, 2017, the members of the VEREIT Board of Directors (the "Board") were: Glenn Rufrano, Hugh Frater, David Henry, Bruce Frank, Eugene Pinover, Mark Ordan, and Julie Richardson. Mr. Frank resigned from the Board effective February 23, 2017. Mary Hogan Preusse and Richard Lieb joined the Board effective February 23, 2017. As of August 28, 2017, the Board members were: Mr. Rufrano, Mr. Frater, Mr. Henry, Mr. Pinover, Mr. Ordan, Ms. Richardson, Ms. Hogan Preusse, and Mr. Lieb. VEREIT will not provide information responsive to the remainder of this Interrogatory on the grounds set forth above.

14

**Interrogatory No. 19:**

Identify each and every trip that each member of the board of directors of VEREIT has made to Arizona since the earlier of when VEREIT hired them or when VEREIT designated its headquarters in Arizona through August 29, 2017, including stating the dates on which they traveled to and from Arizona, the duration of each trip, where they stayed, the general purpose of their trip, and whether they submitted an expense report and/or sought reimbursement from VEREIT for their travel expenses.

**Response to Interrogatory No. 19:**

VEREIT objects to this Interrogatory on the grounds that the Interrogatory seeks information that is irrelevant to the determination of VEREIT's principal place of business, is unduly burdensome to obtain, and is not proportional to the needs of the case.

Subject to and without waiving the foregoing General Objections and specific objections, VEREIT states that the following trips comprise each and every trip that each member of the Board made to Arizona during the period from January 1, 2017 through August 28, 2017: (i) In May 2017, Mr. Rufrano, Mr. Frater, Mr. Henry, Mr. Ordan, Ms. Hogan Preusse, and Mr. Lieb attended the first quarter 2017 Board and committee meetings and the annual shareholder meeting in Phoenix, Arizona, which took place on May 2 and May 3, 2017; and (ii) Mr. Rufrano took the trips to Arizona set forth in Exhibit B.  VEREIT will not provide information responsive to the remainder of this Interrogatory on the grounds set forth above.

**Interrogatory No. 20:**

For the board members identified in response to Interrogatory No. 18, identify every meeting, including board meetings, investor meetings, shareholder meetings, quarterly reports, and any other formal meetings each individual participated, whether in person, over the phone, or by video conference, and identify the means of participating and the location of the individual at the time of such participation.

**Response to Interrogatory No. 20:**

   VEREIT objects to this Interrogatory in its entirety on the grounds that the Interrogatory seeks information that is irrelevant to the determination of VEREIT's principal place of business, is unduly burdensome, and is not proportional to the needs of the case.

   Subject to and without waiving the foregoing General Objections and specific objections, VEREIT states that in May 2017, Mr. Rufrano, Mr. Frater, Mr. Henry, Mr. Ordan, Ms. Hogan Preusse, and Mr. Lieb attended the first quarter 2017 Board and committee meetings and the annual shareholder meeting in Phoenix, Arizona, which took place on May 2 and May 3, 2017. Mr. Pinover and Ms. Richardson were unable to attend in person and participated in the May 2017 meetings by telephone.  Mr. Henry was unable to attend the May 2 Audit Committee meeting in person and participated by telephone.  He attended the May 3 meetings in person.  The remaining Board and committee meetings between January 1, 2017 and August 28, 2017 were conducted either in person in New York or by telephone.  VEREIT will not provide information responsive to the remainder of this Interrogatory on the grounds set forth above.

Dated: June 8, 2018
   New York, New York

        MILBANK, TWEED, HADLEY
        & McCLOY LLP

        By: s/ Alan J. Stone
        Scott A. Edelman
        Alan J. Stone
        Jonathan Ohring
        28 Liberty Street
        New York, New York 10005
        Telephone: (212) 530-5000
        Facsimile: (212) 506-5219

        *Attorneys for Plaintiff VEREIT, Inc.*

## **VERIFICATION**

I, Lauren Goldberg, declare and state as follows:

1.     I am Executive Vice President, General Counsel, and Secretary of VEREIT, Inc., formerly known as American Realty Capital Properties, Inc. ("VEREIT"), and I am authorized to execute this Verification on behalf of VEREIT.

2.     I have read VEREIT's Responses and Objections to Defendants' Interrogatories to Plaintiff, dated June 8, 2018 (the "Responses").

3.     To the best of my knowledge, information, and belief, based upon reasonable inquiry, the contents of the Responses are true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_Lauren Goldberg_
Lauren Goldberg

# Exhibit A

| Payroll Name | Job Title Description | Office Location as of 1/1/17 | Termination Date | Office Location as of 8/28/17 |
|---|---|---|---|---|
| Bartolotta, Michael | EVP, Chief Financial Officer | New York | | Phoenix |
| Caropolo, Rosemary | Property Administrator, Office and Industrial | New York | 05/02/2017 | n/a |
| Carreno, Wilson Francisco | Senior Manager, Asset Management | New York | 03/29/2018 | New York |
| Goldberg, Lauren | EVP, General Counsel and Secretary | New York | | New York |
| Hernandez, Carlos | Contractor, Desktop Administrator | New York | 08/01/2017 | n/a |
| Johnson, Kameel | Executive Assistant | New York | | New York |
| Kelley, John P. | Vice President, Capital Markets - FP&A | New York | | New York |
| Landriau, Gary | SVP, Asset Management | New York | | New York |
| Loury, Nicholas | Manager, Financial Planning & Analysis | New York | | New York |
| McDowell, Paul | Chief Operating Officer | New York | | New York |
| McGee, Kieran | Senior Manager, Asset Management | New York | | New York |
| Miller, William | President & CEO, Cole Capital | New York | 01/31/2018 | New York |
| Neckles, Joseph | Vice President, Acquisitions - Office/Ind | New York | | New York |
| Rosen, Bonni | Vice President, Investor Relations | New York | | New York |
| Ross, Samantha | Communication Specialist | New York | | New York |
| Rufrano, Glenn | Chief Executive Officer | New York | | New York |
| Sokolow, Lisa | Executive Assistant | New York | | New York |
| Vlahos, James | Vice President, Asset Management | New York | | New York |

# Exhibit B

BARTOLOTTA/MICHAEL

| Begin | End | Days | Percentage of Total Workdays |
|---|---|---|---|
| 1/3/2017 | 1/6/2017 | 4 | |
| 1/23/2017 | 1/27/2017 | 5 | |
| 2/6/2017 | 2/17/2017 | 12 | |
| 3/12/2017 | 3/17/2017 | 6 | |
| 3/20/2017 | 3/24/2017 | 5 | |
| 4/4/2017 | 4/8/2017 | 5 | |
| 4/17/2017 | 5/5/2017 | 19 | |
| 5/21/2017 | 5/30/2017 | 10 | |
| 6/12/2017 | 6/16/2017 | 5 | |
| 6/25/2017 | 7/2/2017 | 8 | |
| 7/16/2017 | 7/28/2017 | 13 | |
| 8/12/2017 | 8/28/2017 | 17 | |
| | Total | 109 | 65.66% |

GOLDBERG/LAUREN

| Begin | End | Days | Percentage of Total Workdays |
|---|---|---|---|
| 1/17/2017 | 1/20/2017 | 4 | |
| 2/6/2017 | 2/17/2017 | 12 | |
| 3/20/2017 | 3/25/2017 | 6 | |
| 4/14/2017 | 5/4/2017 | 21 | |
| 5/21/2017 | 5/27/2017 | 7 | |
| 7/19/2017 | 7/28/2017 | 10 | |
| 8/14/2017 | 8/18/2017 | 5 | |
| | Total | 65 | 39.16% |

MCDOWELL/PAUL

| Begin | End | Days | Percentage of Total Workdays |
|---|---|---|---|
| 1/23/2017 | 1/27/2017 | 5 | |
| 2/8/2017 | 2/17/2017 | 10 | |
| 2/28/2017 | 3/3/2017 | 4 | |
| 3/7/2017 | 3/10/2017 | 4 | |
| 3/21/2017 | 3/25/2017 | 5 | |
| 4/25/2017 | 5/5/2017 | 11 | |
| 5/23/2017 | 5/25/2017 | 3 | |
| 6/19/2017 | 6/23/2017 | 5 | |
| 7/17/2017 | 7/21/2017 | 5 | |
| 7/24/2017 | 7/27/2017 | 4 | |
| 8/22/2017 | 8/25/2017 | 4 | |
| 8/28/2017 | 8/28/2017 | 1 | |
| | Total | 61 | 36.75% |

RUFRANO/GLENN

| Begin | End | Days | Percentage of Total Workdays |
|---|---|---|---|
| 1/9/2017 | 1/13/2017 | 5 | |
| 2/12/2017 | 2/17/2017 | 6 | |
| 2/23/2017 | 2/28/2017 | 6 | |
| 3/8/2017 | 3/10/2017 | 3 | |
| 3/21/2017 | 3/24/2017 | 4 | |
| 4/18/2017 | 5/4/2017 | 17 | |
| 6/19/2017 | 6/22/2017 | 4 | |
| 6/26/2017 | 6/27/2017 | 2 | |
| 7/17/2017 | 7/28/2017 | 12 | |
| 8/22/2017 | 8/24/2017 | 3 | |
| 8/28/2017 | 8/28/2017 | 1 | |
| | Total | 63 | 37.95% |

MILLER/WILLIAM

| Begin | End | Days | Percentage of Total Workdays |
|---|---|---|---|
| 1/30/2017 | 2/13/2017 | 5 | |
| 2/6/2017 | 2/10/2017 | 5 | |
| 2/13/2017 | 2/17/2017 | 5 | |
| 3/6/2017 | 3/10/2017 | 5 | |
| 3/21/2017 | 3/25/2017 | 5 | |
| 4/17/2017 | 4/20/2017 | 4 | |
| 5/1/2017 | 5/4/2017 | 4 | |
| 5/9/2017 | 5/12/2017 | 4 | |
| 6/19/2017 | 6/22/2017 | 4 | |
| 7/24/2017 | 7/28/2017 | 5 | |
| 8/28/2017 | 8/28/2017 | 1 | |
| | Total | 47 | 28.31% |