**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

VEREIT, Inc.,

                  Plaintiff,

   v.

Nicholas S. Schorsch, Peter M. Budko,
William M. Kahane, and Edward M. Weil,

              Defendants.

Civil Action No.: 1:17-cv-06546-AKH

**PLAINTIFF VEREIT, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO COMPEL RESPONSES TO DEFENDANTS'**
**INTERROGATORIES UNDER FRCP 37(a)**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................... 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........................................... 3

ARGUMENT ........................................................................................... 7

I.     PLAINTIFFS MISSTATE—AND OVERSTATE—THE SCOPE OF DISCOVERABLE
       INFORMATION UNDER RULE 26. ................................................................ 7

II.    DEFENDANTS' INTERROGATORIES SEEK INFORMATION THAT IS
       IRRELEVANT TO A DETERMINATION OF VEREIT'S PRINCIPAL PLACE OF
       BUSINESS AND DISPROPORTIONATE TO THE NEEDS OF THE CASE ................ 9

       A.     Pre-2017 Information Is Completely Irrelevant to a Determination of VEREIT's
              Principal Place of Business and Is Disproportionate to the Needs of the Case. ... 10

       B.     Many of Defendants' Interrogatories Seek Information That Has No Bearing on a
              Determination of VEREIT's Principal Place of Business and Is Disproportionate
              to the Needs of the Case ...................................................................... 14

CONCLUSION ........................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CBRE Inc. v. Pace Gallery LLC*,
  2018 WL 740994 (S.D.N.Y. Feb. 6, 2018)............................................................17

*Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*,
  2017 WL 2491999 (S.D.N.Y. May 15, 2017) ...........................................................8

*Gilead Scis., Inc. v. Merck & Co, Inc.*,
  2016 WL 146574 (N.D. Cal. Jan. 13, 2016) ...........................................................8

*Hertz Corp. v. Friend*,
  599 U.S. 77 (2010)................................................................................... *passim*

*OneWest Bank, N.A. v. Melina*,
  827 F.3d 214 (2d Cir. 2016).................................................................................9

*Sibley v. Choice Hotels Int'l*,
  2015 WL 9413101 (E.D.N.Y. Dec. 22, 2015) ...........................................................8

*Vaigasi v. Solow Mgmt. Corp.*,
  2016 WL 616386 (S.D.N.Y. Feb. 16, 2016)...............................................................8

*Wolde-Meskel v. Vocational Instruction Project Cmty. Servs.*,
  166 F.3d 59 (2d Cir. 1999)...........................................................................2, 10

**Statutes**

28 U.S.C. § 1332................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)...................................................................................2, 7, 17

Plaintiff VEREIT, Inc., formerly known as American Realty Capital Properties, Inc. ("VEREIT" or the "Company"), by and through its undersigned counsel, hereby submits this memorandum of law in opposition to Defendants' Motion to Compel Responses to Defendants' Interrogatories under FRCP 37(a), filed on June 26, 2018 (Dkt. No. 49).

## PRELIMINARY STATEMENT

The sole question at issue in jurisdictional discovery in this case is whether VEREIT has its principal place of business in Phoenix—where it moved its headquarters and designated principal executive offices in January 2015—or New York, where the Company was headquartered before that move.  Under the Supreme Court's decision in *Hertz Corp. v. Friend*, 599 U.S. 77 (2010), a corporation's principal place of business is the location of its "nerve center," which is "where a corporation's officers direct, control, and coordinate the corporation's activities."  In adopting this "straightforward" test, the Supreme Court "place[d] primary weight upon the need for judicial administration of a jurisdictional statute to remain as simple as possible[,]" noting that "[c]omplex jurisdictional tests complicate a case, eating up time and money as the parties litigate, not the merits of their claims, but which court is the right court to decide those claims."  *Id.* at 80, 94.  Yet "eating up time and money" litigating the jurisdictional dispute is exactly what Defendants have sought to do here.  Simply put, Defendants have turned jurisdictional discovery into a sideshow.

Rather than serving narrowly-tailored interrogatories designed to solicit information concerning the location from which VEREIT's management directs, controls, and coordinates the corporation's activities, Defendants served twenty broad interrogatories seeking information that is both irrelevant to a determination of VEREIT's principal place of business and grossly disproportionate to the needs of the case.  In attempting to defend these interrogatories in their

brief, Defendants overstate the scope of permissible discovery by ignoring that Rule 26(b)(1) was amended in 2015 to reinforce that information sought in discovery must be relevant ***and*** proportional to the needs of the case.  In doing so, Defendants misleadingly quote from (and cite to cases applying) a version of Rule 26(b)(1) that was in place more than fifteen years prior to the 2015 amendments.  Defendants also blatantly misrepresent and misquote VEREIT's statements in a prior litigation in an effort to show that VEREIT has conducted an "about-face" on where it has its principal place of business, when, in fact, VEREIT has never changed its position.

In short, Defendants' motion to compel should be denied for two fundamental reasons. *First*, ignoring black-letter law that subject matter jurisdiction "is determined as of the date that suit is filed," *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs.*, 166 F.3d 59, 62 (2d Cir. 1999)—in this case, August 28, 2017—Defendants' interrogatories seek information going back to ***2014***.  But information concerning VEREIT's management and operations during 2014, 2015, and 2016 has no relevance to a determination of the location of its principal place of business on August 28, 2017, and requiring VEREIT to collect information from these prior years would be unduly burdensome and grossly disproportionate to the needs of the case.  In an effort to provide a view of VEREIT's management and operations leading up to August 28, 2017, VEREIT provided information from as early as January 1, 2017, but Defendants have continued to unreasonably seek information from 2014, 2015, and 2016.  In arguing that they need pre-2017 information, Defendants blatantly misrepresent VEREIT's statements in a March 2017 filing in an action in Maryland federal court, by attempting to pass off a quotation ***from their own brief in this case*** as if it was a statement by VEREIT in the Maryland action.  Contrary to Defendants' misleading statements to this Court, VEREIT never asserted in the Maryland

action that it had its principal place of business in New York or that its management directed, controlled, or coordinated its activities from there.  There is therefore no basis for requiring VEREIT to provide irrelevant pre-2017 information.

*Second*, several of Defendants' interrogatories seek categories of information that have no relevance to a determination of VEREIT's principal place of business and are grossly disproportionate to the needs of the case.  For example, Defendants seek information concerning the layout of VEREIT's New York office including the locations of certain individuals' offices; every trip that VEREIT's officers and directors have made to Arizona; and every property that VEREIT's officers have resided in, owned, or rented.  Perhaps most egregiously, Defendants have asked VEREIT to identify ***every contract*** that VEREIT entered into between January 2014 and August 28, 2017 that was negotiated or executed in New York, contained a New York choice of law or forum selection provision, or required notice to be sent to New York.  What bearing any of this information has on VEREIT's principal place of business is a mystery.

Defendants' efforts should be seen for what they are—an abuse of the discovery process. Depositions of VEREIT's Chief Executive Officer and General Counsel are scheduled for next week.  To the extent Defendants seek additional information, they are free to ask questions during those depositions.  But there is no need for VEREIT to incur additional expense and waste resources by engaging in a collection of information that is irrelevant and would be grossly disproportionate to the needs of the case.  The Court should stop the charade now, and Defendants' motion to compel should be denied in its entirety.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

VEREIT is a Maryland corporation which has had its headquarters and designated principal executive offices in Phoenix since January 2015.  (*See* VEREIT's Mem. of Law in

Opp'n to Defs.' Mot. to Dismiss or Stay (Dkt. No. 22) ("VEREIT's Opp'n to Mot. to Dismiss"), at 5-6.)  VEREIT had previously operated primarily out of the New York City offices of AR Capital, LLC ("AR Capital"), which is the parent company of VEREIT's former external manager, ARC Properties Advisors, LLC ("ARC Advisors"), and is controlled by VEREIT's former Chief Executive Officer and Chairman of the Board of Directors, Defendant Nicholas Schorsch.  (*Id*. at 4-5.)  VEREIT began to transition its operations from New York to Phoenix in February 2014 when VEREIT acquired Phoenix-based Cole Real Estate Investments, Inc. ("Cole"), which, as of September 30, 2013, had approximately 350 employees and owned approximately 1,026 commercial properties.  (*Id*. at 5.)  The Cole acquisition followed VEREIT's completion of its transition from being externally managed by ARC Advisors to self-management in January 2014.  (*Id*.)  In early January 2015, VEREIT designated Phoenix as its headquarters and principal executive offices in its public filings with the U.S. Securities and Exchange Commission.  (*Id*.)  This change followed the resignation of Defendant Schorsch as VEREIT's CEO and member of its Board of Directors and VEREIT's unwinding of all of its relationships with Schorsch-affiliated entities, including AR Capital and ARC Advisors, following the October 2014 announcement by VEREIT of certain accounting issues and an internal investigation.  (*See* Exs. 1, 2.)[1]  As part of this transition to Phoenix, VEREIT left the New York office that it had previously listed as its principal executive offices, and relocated its remaining New York-based activities to a smaller office in New York.  (*See* VEREIT's Opp'n to Mot. to Dismiss at 6.)

VEREIT commenced this action on August 28, 2017, seeking a declaratory judgment that it was in compliance with its obligations to advance certain legal defense costs to Defendants.

---

[1] Unless otherwise specified, "Ex. _" refers to exhibits to the Declaration of Jonathan Ohring, filed contemporaneously herewith.

(*See* Complaint (Dkt. No. 5), Request for Relief.)  VEREIT asserted subject matter jurisdiction

under 28 U.S.C. § 1332 based upon complete diversity of citizenship between the parties and an

amount in controversy exceeding $75,000.  (*Id.* ¶ 2.)

      On October 24, 2017, Defendants filed a motion to dismiss for purported lack of subject

matter jurisdiction.  (*See* Defs.' Mem. of Law in Support of Their Mot. to Dismiss or Stay

("Defs.' Mot. to Dismiss"), Dkt. No. 17, at 5-9.)  Defendants argued that VEREIT still has its

principal place of business in New York, which, if true, would defeat complete diversity because

Defendant Edward M. Weil is purportedly also a citizen of New York.  (*Id.*)[2]

      In its opposition to Defendants' motion to dismiss, VEREIT maintained that the

Company's principal place of business has been located in Phoenix since VEREIT moved its

headquarters and principal executive offices there in January 2015.  (*See* VEREIT's Opp'n to

Mot. to Dismiss at 10-15.)  In support, VEREIT submitted the declaration of Lauren Goldberg,

Executive Vice President, General Counsel, and Secretary of VEREIT, providing extensive

factual information relevant to the location of VEREIT's principal place of business, including

that (i) approximately 90% of VEREIT's full-time employees are located in the Phoenix

headquarters, (ii) both of VEREIT's business segments operate primarily out of Phoenix,

(iii) two of VEREIT's six executive officers reside in Arizona and work primarily in VEREIT's

---

[2] Defendants argued in the alternative that the action should be stayed pursuant to the *Wilton-Brillhart* abstention doctrine in favor of a pending action in the Delaware Court of Chancery (the "Delaware Action").  (*See* Defs.' Mot. to Dismiss at 9-16.)  As this Court agreed, Defendants' alternative argument was mooted when the Delaware Court of Chancery granted VEREIT's motion to dismiss for lack of personal jurisdiction in the Delaware Action.  (Dkt. Nos. 30, 31.)  Defendants subsequently commenced an action in Maryland state court raising the same issues present in this case, and sought reconsideration of this Court's order based on their commencement of the Maryland action.  (Dkt. No. 33.)  This Court denied that motion on February 28, 2018, holding that "Defendants present[ed] no 'cogent and compelling' reason to revisit" the Court's denial of the motion to stay.  (Dkt. No. 35 (citation omitted).)  In addition, on June 15, 2018, the Maryland court granted VEREIT's motion to stay the Maryland action pending this Court's resolution of this action.  (*See* Ex. 3 at 32:20-33:14.)

Phoenix headquarters, and the remaining executive officers spend a substantial portion of their time working in Phoenix, (iv) all of VEREIT's quarterly and annual financial statements are prepared, reviewed and finalized out of the Phoenix headquarters, and the Company's executive officers, who play a significant role in preparing and reviewing these filings, spend substantial time in Phoenix prior to the filings' completion, and (v) VEREIT has held its annual shareholder meetings in the Phoenix headquarters for the past two years.  (Dkt. No. 23 ¶¶ 11-12.)  On January 22, 2018, the Court entered an order deferring decision on the jurisdictional issue until the parties completed "such discovery as each side reasonably requires."  (Dkt. No. 31.)

Following a status conference on May 11, 2018, the Court issued an order providing that Defendants may take jurisdictional discovery consisting of interrogatories and two depositions. (Dkt. No. 40.)[3]  The Court also denied Defendants' request for document discovery.  (*See* Defs.' Ex. C (Dkt. No. 50-3), at 12.)[4]

On May 25, 2018, Defendants served interrogatories on VEREIT, consisting of twenty numbered interrogatories, most of which sought multiple pieces of information.  (*See* Defs.' Ex. A (Dkt. No. 50-1) (collectively, "Interrogatories" and, in the singular, "Interrogatory").)  On June 8, 2018, VEREIT served its responses and objections to the Interrogatories.  (*See* Defs.' Ex. B (Dkt. No. 50-2) ("Responses and Objections").)  VEREIT provided substantive responses to 16 of the 20 Interrogatories, objecting to four Interrogatories in their entirety and six partially on several grounds.  VEREIT's objections were, primarily:  (i) that the Interrogatories sought information going back to 2014, which is irrelevant, unduly burdensome, and disproportionate to

---

[3] Defendants are scheduled to take the depositions of Mr. Glenn Rufrano, Chief Executive Officer of VEREIT, on July 11, 2018, and Ms. Lauren Goldberg, Executive Vice President, General Counsel, and Secretary of VEREIT, on July 13, 2018.

[4] Unless otherwise specified, "Defs.' Ex. _" refers to exhibits to Defendants' Memorandum of Law in Support of Motion to Compel Interrogatory Responses ("Defs.' Moving Br.").

the needs of the case given that subject matter jurisdiction is determined as of the date of the filing of the Complaint (*i.e.*, August 28, 2017); and (ii) that certain Interrogatories sought categories of information that are irrelevant to a determination of VEREIT's principal place of business and disproportionate to the needs of the case.  Following the parties' meet-and-confer, Defendants filed their motion to compel on June 26, 2018, almost three weeks after VEREIT served its Responses and Objections.

## <u>ARGUMENT</u>

### I.    PLAINTIFFS MISSTATE—AND OVERSTATE—THE SCOPE OF DISCOVERABLE INFORMATION UNDER RULE 26.

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is ***relevant to any party's claim or defense and proportional to the needs of the case***, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1) (emphasis added).

In an apparent effort to enlarge the scope of discoverable information they may seek to obtain, Defendants misleadingly quote from (and rely on cases applying) a version of Rule 26(b)(1) that was in place more than fifteen years prior to the 2015 amendments, which were intended to reinforce the requirement of proportional discovery.  (*See* Defs.' Moving Br. at 5.) The version of the Rule quoted by Defendants (*see id*.), which was in place before amendments to Rule 26 in 2000 (and several subsequent amendments), broadly provided that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]"  (Ex. 4.)  While previous versions of the Rule permitted courts to limit the scope of discovery based on proportionality concerns, the 2015 amendments were

enacted to ensure that courts would not read the Rule as including only a relevance, and not a proportionality, requirement.  *See Vaigasi v. Solow Mgmt. Corp.*, 2016 WL 616386, at \*13 (S.D.N.Y. Feb. 16, 2016) (explaining that the "Amendments constitute a reemphasis on the importance of proportionality in discovery").  Thus, the amendments eliminated the provision allowing discovery if it "appears reasonably calculated to lead to the discovery of admissible evidence[,]"which "ha[d] been used by some, incorrectly, to define the scope of discovery." Advisory Committee Notes to the 2015 Amendments; *see also Sibley v. Choice Hotels Int'l*, 2015 WL 9413101, at \*3 (E.D.N.Y. Dec. 22, 2015) ("Clearing up this misinterpretation, the new Rule disposes of this language, ending the incorrect, but widely quoted, misinterpretation of the scope of discovery."); *Gilead Scis., Inc. v. Merck & Co, Inc.*, 2016 WL 146574, at \*1 (N.D. Cal. Jan. 13, 2016) ("No longer is it good enough to hope that the information sought might lead to the discovery of admissible evidence.  In fact, the old language to that effect is gone.  Instead, a party seeking discovery of relevant, non-privileged information must show, before anything else, that the discovery sought is proportional to the needs of the case.").  Further emphasizing the importance of proportionality, the amendments also eliminated "the former provision authorizing the court, for good cause, to order discovery of any matter relevant to the subject matter involved in the action."  Advisory Committee Notes to the 2015 Amendments.

Notwithstanding these amendments, Defendants make no mention in their brief of the fundamental requirement that information sought in discovery be proportional to the needs of the case, in addition to relevant.  Defendants also neglect that in the context of jurisdictional discovery, discovery requests should be "narrowly tailored to cull only the 'specific facts crucial'" to the jurisdictional issue.  *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 2017 WL 2491999, at \*4 (S.D.N.Y. May 15, 2017) (quoting *First City, Texas-Houston,*

*N.A. v. Rafidain Bank*, 150 F.3d 172, 176 (2d Cir. 1998)).  As discussed in greater detail below, much of the information sought in Defendants' Interrogatories is neither relevant, proportional to the needs of the case, nor narrowly tailored to solicit the specific facts relevant to a determination of VEREIT's principal place of business.

## II.   DEFENDANTS' INTERROGATORIES SEEK INFORMATION THAT IS IRRELEVANT TO A DETERMINATION OF VEREIT'S PRINCIPAL PLACE OF BUSINESS AND DISPROPORTIONATE TO THE NEEDS OF THE CASE.

Under *Hertz*, a corporation's principal place of business is the location of its "nerve center," which is "where a corporation's officers direct, control, and coordinate the corporation's activities."  559 U.S. at 92–93.  "In practice, this should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the nerve center."  *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 218 (2d Cir. 2016) (quoting *Hertz*, 559 U.S. at 92) (internal quotation marks omitted). In adopting this "straightforward" test, the Supreme Court "place[d] primary weight upon the need for judicial administration of a jurisdictional statute to remain as simple as possible." *Hertz*, 559 U.S. at 80.  The Court noted that "[c]omplex jurisdictional tests complicate a case, eating up time and money as the parties litigate, not the merits of their claims, but which court is the right court to decide those claims."  *Id.* at 94.

Failing to heed the Supreme Court's guidance, Defendants' Interrogatories and motion to compel needlessly serve to increase the costs of litigating this dispute by seeking information that is irrelevant and disproportionate to the needs of the case.  VEREIT has already devoted a significant amount of time and resources to prepare answers to Defendants' Interrogatories, providing substantive responses to sixteen of Defendants' twenty Interrogatories and avoiding "perfunctory answers" and "boilerplate objections," as instructed by the Court at the May 11,

9

2018 status conference.  (Defs.' Ex. C at 12.)  However, certain of Defendants' Interrogatories

reach far beyond the scope of discoverable information, necessitating objections by VEREIT.

### A. Pre-2017 Information Is Completely Irrelevant to a Determination of VEREIT's Principal Place of Business and Is Disproportionate to the Needs of the Case.

Diversity of citizenship for purposes of subject matter jurisdiction "is determined as of

the date that suit is filed."  *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*,

166 F.3d 59, 62 (2d Cir. 1999); *see* Defs.' Moving Br. at 7 ("VEREIT is correct that the 'nerve

center' test examines a party's principal place of business at the time of filing").  The Complaint

in this action was filed on August 28, 2017.  Accordingly, the dispositive question is where

VEREIT had its principal place of business as of that date.

Yet Defendants' Interrogatories seek information dating back to ***2014***—three years

before the relevant time period for determining VEREIT's principal place of business.  This

request is nothing short of abusive.  In an effort to provide Defendants with information to assess

VEREIT's management and operations for some period of time prior to August 28, 2017,

VEREIT agreed in its Responses and Objections to provide responsive information from

August 28, 2017 back to January 1, 2017—an eight-month period—more than sufficient to

assess VEREIT's principal place of business as of the date of the filing of the Complaint.  (*See*

Defs.' Ex. B at 2-3.)  Information pertaining to VEREIT's principal place of business in 2014,

2015, and 2016 simply has no relevance to a determination of the location of its principal place

of business on August 28, 2017.

In addition, Defendants' request for pre-2017 information is completely disproportionate

to the needs of the case.  The question on the instant motion is one of jurisdiction rather than the

merits of the case.  Requiring VEREIT to obtain and provide information on each of Defendants'

twenty Interrogatories for 2014, 2015, and 2016 would be unduly burdensome in light of the

10

complete lack of relevance of the information to both the jurisdictional question and the larger dispute.

Nonetheless, Defendants now move this Court to order VEREIT to provide information dating back to 2014, describing their proposed time period as "reasonable." (Defs.' Moving Br. at 7.) But Defendants' asserted bases for seeking information from prior to 2017 are unavailing—and deliberately misleading.

Defendants attempt to defend their demand for information dating back to 2014 by arguing that VEREIT's pre-2017 activities "may lead to relevant evidence" regarding when VEREIT "shifted its main executive functions to Arizona," and that this information "would reveal the motivations for designating Arizona as VEREIT's headquarters." (*Id.* at 7-8.) But, as discussed previously, whether information "may lead to discoverable evidence" is no longer the standard for permissible discovery. *See supra* at 7-8. More fundamentally, when and why VEREIT moved its headquarters to Phoenix is irrelevant to determining the location of VEREIT's principal place of business as of the date of the filing of the action, two-and-a-half years after the relocation of VEREIT's headquarters. The sole relevant question is where VEREIT's activities were directed, controlled, and coordinated as of August 28, 2017.

Moreover, Defendants' assertion that they need information concerning the motivations for VEREIT's change in its headquarters is a complete smoke screen. Defendants know quite well why VEREIT moved its headquarters to Phoenix, since Defendant Schorsch was a director of VEREIT during most of the transition. The move followed (i) VEREIT's completion of its transition from being externally managed by ARC Advisors—an entity controlled by Defendant Schorsch—to self-management, (ii) VEREIT's acquisition of Phoenix-based Cole in a merger, (iii) the resignation of Schorsch as VEREIT's CEO and Chairman of its board of directors and

VEREIT's unwinding of all of its relationships with Schorsch-affiliated entities, including AR Capital and ARC Advisors, following the October 2014 announcement by VEREIT of certain accounting irregularities and an internal investigation, and (iv) VEREIT's relocation of its remaining New York-based activities from the New York offices it previously shared with AR Capital to a smaller office in New York.  *See supra* at 4.

In support of their argument that they need pre-2017 information, Defendants also blatantly misrepresent VEREIT's statements in a March 2017 filing in a separate action in Maryland federal court, by ***attempting to pass off a quotation from their own brief in this case as if it was a statement by VEREIT in the Maryland action***.  Specifically, Defendants claim that "VEREIT has represented to another federal court just a few months before it commenced this action that . . . New York is 'where VEREIT's corporate officers live, work, and 'direct, control, and coordinate' VEREIT's activities.'"  (Defs.' Moving Br. at 2-3.)  The statement that New York is "where VEREIT's corporate officers live, work, and 'direct, control, and coordinate' VEREIT's activities" is a quotation from ***Defendants' memorandum of law in support of their motion to dismiss in this case*** (*see* Defs.' Mot. to Dismiss at 4), not from any statement by VEREIT in the Maryland action.  Defendants then make the same misrepresentation in the Conclusion section of their brief.  (*See* Defs.' Moving Br. at 11 (describing "VEREIT's averment that New York is 'where VEREIT's corporate officers live, work, and 'direct, control, and coordinate' VEREIT's activities'").)  Contrary to Defendants' misleading statements, since moving its headquarters to Phoenix in 2015, VEREIT has always maintained that Phoenix is its principal place of business.  (*See* Ex. 5 (excerpt of VEREIT's Form 10-K/A filed on March 2, 2015, stating that the Company "received [a legal] Notice on January 16, 2015, ***at an address in New York City that was formerly our principal place of business***" (emphasis added)).)

In a similar vein, Defendants falsely assert that VEREIT "parroted in [the Maryland] federal action the standard set forth in [*Hertz*] to establish that the 'nerve center' of VEREIT's operations was New York (when it was advantageous to VEREIT to deem itself a New York corporation). . . ." (Defs.' Moving Br. at 3.)  This statement is patently false.  VEREIT did not state in that filing in the Maryland action anything about *Hertz* or the "nerve center" test, or that VEREIT's officers directed, controlled, and coordinated VEREIT's activities from New York. Rather, VEREIT simply stated that key members of current management "perform[ed] significant management activities" in New York—a fact that VEREIT does not contest.  (Mem. of Law of Nominal Def. and Certain Individual Defs.' Motion to Transfer Venue or, in the Alternative, Stay the Action at 21, *Meloche v. Schorsch*, No. 1:16-cv-03366-ELH (D. Md. Mar. 24, 2017), ECF No. 72-1).  As VEREIT has previously explained in this action (*see* VEREIT's Opp'n to Mot. to Dismiss at 15), nothing in that statement contradicts VEREIT's position that its headquarters and principal place of business is in Phoenix.  That VEREIT did not make the statement Defendants claim it made is not surprising, as there was no need in the Maryland action for VEREIT to make any statement concerning its nerve center.  VEREIT's statement in the Maryland action was in support of a motion to transfer venue to New York based on the convenience of the New York forum as compared with Maryland, and had nothing to do with where VEREIT's principal place of business was located.  Thus, contrary to Defendants' assertion, VEREIT has not conducted any "about-face" (Defs.' Moving Br. at 3), and there has been no need for VEREIT to "disavow[]" the prior statement in the Maryland action (*id.* at 7). Indeed, in its Responses and Objections to Defendants' Interrogatories in this action, VEREIT stood behind its statements in the Maryland filing, noting only that since that filing, VEREIT's Chief Financial Officer moved from New York to Phoenix—a fact that further supports a finding

that VEREIT's principal place of business is in Phoenix.  (*See* Responses to Interrogatories 7 and 8.)

Defendants' blatant misrepresentations to this Court regarding VEREIT's prior statements further support the conclusion that their request for pre-2017 information should be denied.[5]

**B.    Many of Defendants' Interrogatories Seek Information That Has No Bearing on a Determination of VEREIT's Principal Place of Business and Is Disproportionate to the Needs of the Case.**

In addition to seeking information from before 2017, certain of Defendants' Interrogatories seek categories of information that are irrelevant to a determination of VEREIT's principal place of business and disproportionate to the needs of the case.  Far from being "narrowly tailored," Defendants' objectionable Interrogatories represent an abuse of this Court's order permitting jurisdictional discovery.  VEREIT's objections to these Interrogatories were well-founded, and Defendants' arguments seeking to compel VEREIT to respond are unavailing.[6]

*Interrogatory No. 4*.  Interrogatory No. 4 seeks expansive information about VEREIT's New York office, including "whether VEREIT owned or rented the office space in each year, the

---

[5] Defendants also defend their request for pre-2017 information by stating that "VEREIT's responses to these interrogatories could facilitate more pointed questions at the Court-ordered depositions scheduled for July."  (Defs.' Moving Br. at 8.)  This does not support Defendants' position.  Defendants may not elicit information outside the scope of discovery through interrogatories in preparation to further question VEREIT executives on the same irrelevant information at depositions.

[6] Defendants assert that the information sought in their Interrogatories is relevant because "this Court has already ordered VEREIT to produce two witnesses 'who know all the affairs of the company and manage all respects of those affairs[.]'"  (Defs.' Moving Br. at 8 (quoting Court's Order Regulating Discovery (Dkt. No. 40)).)  But the Court's statements cannot sensibly be read as implying that "all the affairs" of the Company are relevant to the determination of its principal place of business, as that is clearly inconsistent with the "nerve center" test, which only looks at high level activities of a corporation.  Rather, the Court's order was clearly intended to ensure that the individuals whom Defendants depose would be knowledgeable about the subset of information relevant to a determination of VEREIT's principal place of business.

approximate square footage of office space in New York that was owned or leased each year, and for any leases, the term of the lease, when and where the lease was negotiated, and who on behalf of VEREIT signed the lease."  VEREIT answered portions of the Interrogatory, providing the location and square footage of its New York office (notwithstanding the irrelevance of the latter), and stating that a wholly owned subsidiary of VEREIT assumed the lease of the New York office on November 5, 2013.[7]  (*See* Response to Interrogatory No. 4.)  Defendants complain, however, that VEREIT did not provide information about where the lease for the New York office was negotiated and who signed the lease on behalf of VEREIT.  (*See* Defs.' Moving Br. at 8.)  Defendants attempt to defend the purported relevance of this information by stating that "if VEREIT representatives are negotiating and signing . . . leases in New York, it suggests that VEREIT's actual center of control and coordination is in New York."  (*Id*. at 9.)  This logic strains reason.  Which VEREIT representative was responsible for negotiating or finalizing VEREIT's assumption of the lease for its New York offices and where that negotiation was conducted *in 2013* does not bear on VEREIT's principal place of business as of August 28, 2017.  Even if the lease had been entered into in 2017, such information is simply irrelevant to the determination of VEREIT's "nerve center."  A lease can be negotiated and signed from anywhere in the world, and such a fact has no bearing on where management "direct[s], control[s], and coordinate[s] the corporation's activities."  *Hertz*, 559 U.S. at 93.

*Interrogatory No. 9*.  Interrogatory No. 9 asks VEREIT to "provide a diagram of VEREIT's office spaces in both [Phoenix] and New York and mark on the diagram the dedicated

---

[7] As discussed in VEREIT's Response to Interrogatory No. 4, the New York office currently occupied by VEREIT was previously leased by CapLease, Inc. ("CapLease"), and VEREIT assumed the lease when it acquired CapLease in November 2013.  VEREIT operated out of both the former CapLease office and the AR Capital office in New York until January 2015 when VEREIT designated Phoenix as its headquarters and principal executive offices and relocated all of its New York-based activities to the CapLease office. *See supra* at 4.

physical offices of" VEREIT's executive officers.  This information is completely irrelevant to a

determination of VEREIT's principal place of business.  There is simply no reason why the

location where one officer sits relative to another officer has any bearing on the location from

which management directs, controls, and coordinates the corporation's activities.  Moreover, as

indicated in VEREIT's objections, to the extent that Interrogatory No. 9 seeks the production of

a diagram, it is not an interrogatory, but rather a request for documents, and is plainly prohibited

by the Court's oral ruling at the May 11, 2018 Status Conference denying Defendants' request

for document discovery.  (*See* Defs.' Ex. C at 12.)[8]

    *Interrogatory No. 11*.  Interrogatory No. 11 asks VEREIT to "identify every property

(including houses and apartments) that [its executive officers] have resided in, inhabited, owned

or rented between January 2014 and August 29, 2017."  But where an executive officer

maintains a residence, a vacation home, or an investment property—whether it is in New York or

Phoenix (or, hypothetically, Florida or Timbuktu)—has no bearing on the determination of

VEREIT's principal place of business.  Defendants' request for detailed information about

VEREIT's executive officers' residences and other properties is pure gamesmanship, attempting

to invade the personal information of these individuals under the pretext of discovery.  Despite

the irrelevance of this request, VEREIT provided information regarding the state of residence

in 2017 for each of its officers in response to Interrogatory No. 10.

    *Interrogatory No. 16*.  Perhaps the most egregious example of Defendants' abuse of the

discovery process is Interrogatory No. 16, which requests that VEREIT "[i]dentify any contracts

---

[8] Defendants assert that VEREIT "could have easily provided the requested information in the context of an interrogatory response."  (Defs.' Moving Br. at 9 n.6.)  But that would require VEREIT to examine diagrams of the New York office (to the extent they exist) and insert images of the documents into its Responses and Objections.  This would violate the Rules as well as this Court's order, and would in effect allow Defendants to backdoor a request for document production.

that VEREIT entered into between January 2014 and August 29, 2017, that were negotiated in New York, executed in New York, contained a New York choice of law and/or New York forum provision, and/or required notice under the contract to be sent to VEREIT's New York office." This Interrogatory represents a gross violation of the relevance and proportionality requirements of Rule 26(b)(1).  As a publicly-traded real estate investment trust engaged in the business of acquiring and managing billions of dollars worth of commercial properties, VEREIT regularly enters into a multitude of contracts as part of its regular, day-to-day business.  The *Hertz* test, however, "focuses on where a corporation's high level decisions are made, not where day-to-day activities are managed."  *CBRE Inc. v. Pace Gallery LLC*, 2018 WL 740994, at *2 (S.D.N.Y. Feb. 6, 2018) (internal quotation marks omitted) (quoting *St. Paul Fire & Marine Ins. Co. v. Scopia Windmill Fund*, LP, 87 F. Supp. 3d 603, 605 (S.D.N.Y. 2015)).  Moreover, Defendants fail entirely to explain why a New York choice-of-law clause, forum selection clause, or notice provision has any relevance to a determination of where management directs the Company's activities.  In addition, responding fully to the Interrogatory would impose a tremendous burden on VEREIT, requiring it to identify every contract that it has signed in 2017 (or, as Defendants would have it, since 2014), analyze the contract, and investigate background information about how the contract was negotiated, to the extent such information can even be uncovered.  In light of the lack of relevance of the information sought by Interrogatory No. 16, and the undue burden that VEREIT would endure by answering it, the Interrogatory is grossly disproportionate to the needs of the case.

    ***Interrogatory Nos. 5 and 6***.  Interrogatory No. 5 asks VEREIT to identify, for each of its executive officers, the officer's "title, position and role at VEREIT at the time [of the Maryland action], and whether each of the individuals held that same title, position, and role at VEREIT as

of August 2017 when VEREIT filed the instant action, and if not, describe any changes." Defendants complain that VEREIT "identified these individuals by name and provided their titles, but provided no further information regarding their roles at VEREIT." (Defs.' Moving Br. at 9.) However, the titles and positions of VEREIT's high-level executive officers accurately describe their "roles," as those terms are generally well-understood among public companies. If Defendants sought specific information, their Interrogatory should have been more precise.[9]

Moreover, to the extent more information concerning each officer's "role" was required, that information **was provided** by VEREIT in response to Interrogatory No. 6, in which Defendants asked VEREIT to "[d]escribe the 'significant management activities'" of each of its executive officers and to describe whether those activities changed since the filing of VEREIT's opposition to the motion to transfer venue in the Maryland action. In response, VEREIT provided information describing the general duties and responsibilities of each of its executive officers. (See Response to Interrogatory No. 6.) Those are precisely the "significant management activities" that Defendants asked about. Defendants do not explain what additional information should have been provided in response to this Interrogatory. To the extent they are asking VEREIT to provide a description of every single task that the officers perform in the course of their duties, such information would be both irrelevant and grossly disproportionate to the needs of the case. For example, Defendants take issue only with VEREIT's response that its Chief Executive Officer, Glenn Rufrano, "manages and oversees the operations of VEREIT." (See Defs.' Moving Br. at 10.) But, as with any CEO of a publicly-traded company, Mr. Rufrano's responsibilities are broad and well-understood, encompassing the oversight of all

---

[9] Moreover, in Ms. Goldberg's declaration submitted along with VEREIT's opposition to Defendants Motion to Dismiss or Stay, VEREIT already provided the "title, position and role" of VEREIT's executive officers, as well as descriptions of certain of their responsibilities at VEREIT. (Dkt. No. 23 ¶¶ 12-14.) Therefore, Defendants already received all information to which they are entitled on this topic.

operations of VEREIT.  Therefore, VEREIT's response to Interrogatory No. 16 was comprehensive and appropriate.

*Interrogatory No. 14*.  Interrogatory No. 14 seeks a plethora of information concerning trips VEREIT's executive officers took to Arizona, asking VEREIT to identify "each and every trip" that the officers made to Arizona since the earlier of their hiring or VEREIT's designation of Phoenix as it headquarters, including "the dates on which they traveled to and from Arizona, the duration of each trip, where they stayed, the general purpose of their trip, and whether they submitted an expense report and/or sought reimbursement from VEREIT for their travel expenses."  Notwithstanding the irrelevance of much of this information, VEREIT responded by providing an exhibit with responsive information that was reasonably obtainable without being unduly burdensome, setting forth a list with the dates of each of the individuals' trips during the period January 1, 2017 through August 28, 2017, the length of the trip, and the corresponding percentage of total workdays for that period.  (*See* Ex. B to Responses and Objections.) Defendants complain, however, that VEREIT did not describe "the general purpose" of each trip, as requested in the Interrogatory.  (*See* Defs.' Moving Br. at 10.)  But the "general purpose" of each trip was to conduct business for VEREIT.  To the extent Defendants seek information concerning every task that each officer performed while visiting the Phoenix headquarters, such a request would be unduly burdensome and grossly disproportionate to the needs of the case, requiring each of VEREIT's executive officers to trace back to the beginning of 2017 (or, as Defendants would have it, 2014) to somehow attempt to ascertain (after the fact) specific tasks that each of them intended to perform during their trips to Arizona.  Defendants' request should be denied.

*Interrogatory No. 18*.  Interrogatory No. 18 requests information about each member of

VEREIT's board of directors, including "the dates of their service, the state of their residency,

the amount of their time spent each year working on issues related to VEREIT, a description of

that work for each year, and how much time working on issues related to VEREIT was spent in

New York versus Arizona."  In response, VEREIT identified each member of its board of

directors as of both January 1, 2017 and August 28, 2017, and their dates of service.  (*See*

Response to Interrogatory No. 18.)  Defendants complain, however, that VERIT did not provide

"information regarding the work performed by these individuals, where that work was

performed, or where these individuals reside."  (Defs.' Moving Br. at 10.)  However, such

information is irrelevant under the *Hertz* "nerve center" test, which focuses on "where a

corporation's **officers** direct, control, and coordinate the corporation's activities," not its board

members.  *Hertz*, 559 U.S. at 92-93 (emphasis added).  Moreover, in response to Interrogatory

No. 20, VEREIT provided the only arguably relevant information concerning the directors'

activities, providing information regarding the date and location from which VEREIT's board

members participated in board and shareholder meetings in 2017.  (*See* Response to

Interrogatory No. 20.)

In addition, obtaining the information sought in Interrogatory No. 18 would require

VEREIT's board members to somehow recall detailed information from throughout 2017 (or, as

Defendants would have it, going back to 2014) concerning "the amount of their time spent each

year working on issues related to VEREIT, a description of that work for each year," and how

much of that time was spent in New York versus Phoenix.  This information would likely be

impossible for VEREIT to obtain for most of its directors, because as with many public

companies, VEREIT's outside directors do not conduct their business through the Company's

systems and servers.  As such, that information would not be in VEREIT's possession, custody, or control.  Accordingly, having VEREIT search for this information would be a waste of time and resources, and Defendants' request should be denied as disproportionate to the needs of the case, as well as on relevance grounds.

     ***Interrogatory No. 19***.  Similar to Interrogatory No. 14 with respect to VEREIT's officers, Interrogatory No. 19 asks VEREIT to provide a glut of information concerning its board members' trips to Arizona.  In response, VEREIT provided the dates of its board members' trips to Arizona during the period from January 1, 2017 through August 28, 2017, and identified the board and shareholder meetings that each director attended while in Arizona.  (*See* Response to Interrogatory No. 19.)  Defendants contend that, like VEREIT's response to Interrogatory No. 9, VEREIT's response does not identify the "general purpose" of each of the trips to Arizona. (Defs.' Moving Br. at 10.)  However, VEREIT ***did*** provide that information, identifying each of the board and shareholder meetings that the directors attended while in Arizona.  Defendants do not specify what additional information VEREIT could possibly provide, rendering their challenges to VEREIT's response baseless.

## <u>CONCLUSION</u>

     For the foregoing reasons, Defendants' motion should be denied in its entirety.

Dated: July 5, 2018
        New York, New York

                          MILBANK, TWEED, HADLEY
                          & McCLOY LLP

                          By: /s/ Alan J. Stone
                          Scott A. Edelman
                          Alan J. Stone
                          Jonathan Ohring
                          28 Liberty Street
                          New York, New York 10005
                          Telephone:  (212) 530-5000
                          Facsimile:  (212) 506-5219

                          *Attorneys for Plaintiff VEREIT, Inc.*