THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **VEREIT, Inc.,** | Civil Action No. 17-cv-6546 |
| Plaintiff, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| **Nicholas S. Schorsch, Peter M. Budko, William M. Kahane, and Edward M. Weil,** | |
| Defendants. | |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR
MOTION TO COMPEL INTERROGATORY RESPONSES**

Pursuant to S.D.N.Y. local rule 6.1(a), Defendants Nicholas S. Schorsch, Peter M. Budko, William M. Kahane, and Edward M. Weil (collectively, the "Individuals"), by and through their undersigned counsel, hereby submit this Reply in further support of the Individuals' Motion to Compel (Dkt. No. 49) Plaintiff VEREIT, Inc. ("VEREIT") to comply with this Court's May 11, 2018 Order Regulating Discovery (Dkt. No. 40) and directing VEREIT to respond to the Individuals' Interrogatories, served on May 25, 2018.

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

I.     The Individuals' Interrogatories Are Consistent
With The Applicable Discovery Standard ...........................................................................2

II.    Pre-2017 Information Is Relevant And Proportionate
To The Needs Of This Case .................................................................................................4

        a.      Historical information is relevant to reconcile VEREIT's
conflicting claims about its New York activities .....................................................4

        b.      The circumstances of VEREIT's "move" are
relevant to the nerve center determination ..............................................................5

        c.      The Individuals did not misrepresent VEREIT's prior
statements about its New York connections ...........................................................5

III.   VEREIT Has Failed To Justify Its Failure To Fully
Respond To The Individuals' Interrogatories ......................................................................6

CONCLUSION ................................................................................................................................9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*City of New York v. FedEx Ground Package Sys., Inc.*,
   No. 13 CIV. 9173 (ER), 2017 WL 4155410 (S.D.N.Y. Sept. 19, 2017) .................................3

*Edwards v. Hearst Commc'ns, Inc.*,
   No. 15CV9279ATJLC, 2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016) ....................................3

*Hughes v. Twenty-First Century Fox, Inc.*,
   No. 17CV7093, 2018 WL 1936096 (S.D.N.Y. Apr. 24, 2018) ................................................2

*Lindsey v. Butler*,
   No. 11 CIV. 9102 (ER), 2017 WL 4157362 (S.D.N.Y. Sept. 18, 2017) .................................3

*McFarlane v. First Unum Life Ins. Co.*,
   No. 16-CV-7806 (RA), 2017 WL 4564928 (S.D.N.Y. Oct. 12, 2017) ....................................3

**Other Authorities**

Rule 26(b)(1) .......................................................................................................................................2

**PRELIMINARY STATEMENT**

Instead of curing the deficiencies in its interrogatory responses, VEREIT has chosen to launch ad hominem attacks against the Individuals, accusing them of "blatant misrepresentations," and to accuse the Individuals of misstating applicable standards and misattributing quotes to VEREIT. VEREIT's decision to make these types of arguments speaks volumes about the impropriety of VEREIT refusing to fully respond to the Interrogatories.

After devoting the first portion of its brief to an uncontested and well-established discovery standard, VEREIT challenges the time-frame of the Individuals' request for information dating back to 2014 and asserts that this request is "nothing short of abusive." (VEREIT's Br. at 10.) The Individuals, however, have a legitimate need for this information in order to understand and challenge how VEREIT could engage in significant management activities in New York while maintaining that its "nerve center" is in Arizona. Such information is relevant to the determination of VEREIT's principle place of business, especially in light of VEREIT's repeated assertion that it "moved" its headquarters in January 2015. VEREIT then concludes by arguing that certain of the Individuals' interrogatories seek information that is irrelevant and disproportionate. (VEREIT's Br. at 14.) Despite these accusations, VEREIT fails to provide compelling explanations for failing to respond to the Individuals' Interrogatories.

At bottom, if VEREIT had devoted the same resources to answering the Individuals' interrogatories as it has to baselessly impugning their integrity, there likely would have been no need for the Individuals to move to compel in the first place. The Individuals, therefore, respectfully request that the Court order VEREIT to fully respond to the Individuals' proportional, narrowly tailored interrogatories.

## ARGUMENT

### I. THE INDIVIDUALS' INTERROGATORIES ARE CONSISTENT WITH THE APPLICABLE DISCOVERY STANDARD

VEREIT first accuses the Individuals of engaging in "an apparent effort to enlarge the scope of discoverable information" by "misleadingly quot[ing] from (and rely[ing] on cases applying) a version of Rule 26(b)(1) that was in place more than fifteen years prior to the 2015 amendments, which were intended to reinforce the requirement of proportional discovery." (VEREIT's Br. at 7.) According to VEREIT, the Individuals relied on this standard to gloss over the emphasis on proportionality in the current iteration of that rule. In the same vein, VEREIT accuses the Individuals of neglecting that jurisdictional discovery requests must be narrowly tailored. (VEREIT's Br. at 8.). This argument is a red herring.

The Individuals have not attempted to deceive the Court regarding this well-established and uncontested discovery standard, in which the Court is undoubtedly well versed. To the extent the Individuals relied on this aspect of the Rule 26 standard, so too have a number of judges in the Southern District. Rather than attempting to mislead the Court, the Individuals simply cited a broad and well-established discovery standard as a preface to fully engaging with all of VEREIT's objections, including those based on proportionality and whether the requests were narrowly tailored to jurisdictional issues. Indeed, numerous courts in this circuit have continued to rely on whether a request is likely to lead to the discovery of admissible/relevant evidence as a proper consideration in determining whether a particular request is valid since the 2015 amendments. *See, e.g., Hughes v. Twenty-First Century Fox, Inc.*, No. 17CV7093, 2018 WL 1936096, at *2 (S.D.N.Y. Apr. 24, 2018) ("…Rule 26's relevance requirement permits the discovery of information that 'need not be admissible at the trial if the discovery appears

reasonably calculated to lead to the discovery of admissible evidence….'") (citation omitted); *McFarlane v. First Unum Life Ins. Co.*, No. 16-CV-7806 (RA), 2017 WL 4564928, at *2 (S.D.N.Y. Oct. 12, 2017) ("Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.") (citation omitted); *Lindsey v. Butler*, No. 11 CIV. 9102 (ER), 2017 WL 4157362, at *3 (S.D.N.Y. Sept. 18, 2017) (granting motion to compel and noting that "[t]he information sought need not be admissible at trial as long as the discovery appears reasonably calculated to lead to the discovery of admissible evidence.") (citation omitted); *City of New York v. FedEx Ground Package Sys., Inc.*, No. 13 CIV. 9173 (ER), 2017 WL 4155410, at *2 (S.D.N.Y. Sept. 19, 2017) (granting, in part, motion to compel and noting that, "[a]lthough '[t]he discovery rules are to be given a broad and liberal construction ... they do not permit discovery of matters that are neither relevant to issues in the case nor calculated to lead to relevant and admissible evidence.'") (citation omitted). Indeed, relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *Edwards v. Hearst Commc'ns, Inc.*, No. 15CV9279ATJLC, 2016 WL 6651563, at *2 (S.D.N.Y. Nov. 9, 2016) (citation omitted).

The continuing applicability of that broad standard aside, the Individuals have directly addressed VEREIT's objections based on proportionality, arguing that "the interrogatories pose a minimal and proportionate burden on VEREIT, particularly in light of the millions of dollars at stake in this litigation." (Def. Br. at 4.) Moreover, the Individuals argued that their interrogatories relating to where VEREIT's officers direct, control and coordinate VEREIT's activities were "narrowly tailored to that purpose." (Def. Br. at 9.) Far from shying away from

3

these standards, the Individuals addressed them head on and explained why their Interrogatories *were* proportional and narrowly tailored to the needs of this case.

Thus, VEREIT's focus on issues relating to the applicable discovery standard should not serve to obfuscate the reality that its interrogatory responses are deficient. No attack on the applicable standards – on which there is no actual disagreement – can alter this fundamental fact.

## II. PRE-2017 INFORMATION IS RELEVANT AND PROPORTIONATE TO THE NEEDS OF THIS CASE

VEREIT asserts that pre-2017 information is irrelevant and disproportionate to the needs of the case. In support of this position, VEREIT makes three arguments: (1) the request for such information is disproportionate because jurisdiction is at issue, not the merits of the case (VEREIT's Br. at 10); (2) the Individuals have erroneously relied on the "lead to admissible evidence" standard (VEREIT's. Br. at 11); (3) the Individuals already know VEREIT's motivations for moving its headquarters to Arizona because Defendant Schorsch was a director of VEREIT during "most of the transition" (VEREIT's. Br. at 11); and (4) the Individuals have falsely attributed a quote to VEREIT (VEREIT's. Br. at 12). Each of these arguments fails.

### a. Historical information is relevant to reconcile VEREIT's conflicting claims about its New York activities.

The fact that these interrogatories relate to jurisdictional discovery as opposed to the merits of the case is not the relevant consideration in determining proportionality. Rather, whether VEREIT is entitled to the relief it seeks, *i.e.*, depriving the Individuals of millions of dollars in advancement to which they are entitled, is directly dependent on the issue of jurisdiction. Thus, the notion that fully answering 20 targeted interrogatories spanning a three year period is somehow disproportionate to the needs of this multi-million dollar case is baseless.

Furthermore, the Individuals have not impermissibly relied on the "lead to admissible evidence" standard. Rather, the Individuals argued that information relating to the activities of VEREIT's executives prior to 2017 may lead to "relevant" evidence, which is the entire purpose of interrogatories. Such evidence would illuminate how VEREIT could maintain its nerve center in Arizona while engaging in significant management activities in New York. VEREIT's apparent focus on the term "may lead to" doesn't alter the nature and purpose of the objected-to requests – to discover relevant information that is probative of whether the Court has jurisdiction over this action.

    b. <u>The circumstances of VEREIT's "move" are relevant to the nerve center determination.</u>

VEREIT's argument that jurisdictional discovery regarding the motivations for its move to Arizona are obviated by the fact that Mr. Schorsch is aware of these motivations is misplaced. Indeed, in making this argument, VEREIT explains, in part, the circumstances under which it purportedly transitioned its operations from New York to Phoenix. Answering the Individuals' interrogatories regarding VEREIT's motivations for this transition would be the next logical step in this explanation and would be directly relevant to whether VEREIT's jurisdictional arguments comport with the reality of their operations. Put differently, in order to determine VEREIT's actual nerve center at the time this action was filed, the Individuals are entitled to know whether (and why) VEREIT intended to, and actually did, move its nerve center to Arizona – information that is directly sought by the Individuals' as yet unanswered interrogatories.

    c. <u>The Individuals did not misrepresent VEREIT's prior statements about its New York connections.</u>

Finally, VEREIT's argument that the Individuals "blatantly misrepresent[ed]" VEREIT's statements to this Court by "attempting to pass off a quotation from their own brief in this case as

5

if it was a statement by VEREIT in the Maryland Action" (VEREIT's Br. at 12) is inaccurate and should be rejected. In their Motion, the Individuals asserted that VEREIT had represented to a Maryland Court that members of VEREIT's management "perform significant management activities from VEREIT's offices in New York" and that New York is "where VEREIT's corporate officers live, work, and 'direct, control, and coordinate' VEREIT's activities." (Def. Br. at 2-3.) In support of this quote, the Individuals cited directly *to their own brief* in support of their initial motion to dismiss or stay this action which, in turn, cited to VEREIT's briefing in Maryland. Both documents are available on the docket related to this action. Thus, contrary to the intent VEREIT attaches to the framing of this quote, the Individuals were simply reiterating an argument they had previously made before this very Court in support of their interrogatories. Specifically, that based on VEREIT's own representations regarding where its corporate officers lived and "perform significant management activities," VEREIT directed, controlled and coordinated VEREIT's activities from New York. To the extent the Individuals' motion appeared to attribute the words "direct, control and coordinate" to VEREIT, any such attribution was inadvertent. There was certainly no intent to misrepresent VEREIT's statements; nor would there have been any purpose to misrepresent those statements. This is because VEREIT's statements speak for themselves and provide a sufficient basis both for the Individuals' Motion to Dismiss and for the Individuals' interrogatories. Thus, VEREIT's emphasis on this alleged misrepresentation is misplaced and should be rejected.

### III. VEREIT HAS FAILED TO JUSTIFY ITS FAILURE TO FULLY RESPOND TO THE INDIVIDUALS' INTERROGATORIES

VEREIT concludes its opposition to the Individuals' Motion to Compel by attempting to justify its failure to fully respond to the Individuals' 20 targeted, narrowly tailored, and proportionate interrogatories. Although the Individuals principally rely on the arguments in their

initial motion in support of the deficiency of VEREIT's responses, the Individuals make the following brief observations in response to VEREIT's arguments:

**Interrogatory 4:** Where VEREIT's executives negotiate contracts, including the lease of its New York office, is relevant to where VEREIT's decision-making occurs.

**Interrogatory 9:** The focus of this interrogatory was to determine which VEREIT officers have physical office space in New York and where that office space is located. If VEREIT objects to the drawing of a diagram to that effect, it could have provided such information in narrative fashion instead of simply refusing to respond.

**Interrogatory 11:** The Individuals have no interest in needlessly invading the privacy of VEREIT's executives. The purpose of this interrogatory was to establish whether these executives have ties to New York or other states. This information is relevant to the location of VEREIT's principle place of business in that if all of VEREIT's executives live in New York and have no property in any other location, it would strain credulity for VEREIT to argue that its nerve center was in Arizona.

**Interrogatory 16**: There is nothing abusive or egregious about this request. If VEREIT negotiates and executes significant contracts in New York, or routinely includes New York choice of law and forum selection clauses in its contracts, it suggests that New York is its nerve center.  If, as VEREIT argues, it declined to respond to this request because the Individuals should be focused on high-level decisions, VEREIT could, at the very least, have provided information relating to particularly significant contracts it has entered into during the relevant period.

**Interrogatories 5 and 6**: VEREIT's position is that by providing the "general duties and responsibilities" of each executive, it satisfied its obligation to describe these individuals'

7

significant management activities. VEREIT further argues that its response with respect to Mr. Rufrano – that he "manages and oversees the operations of VEREIT" was comprehensive and appropriate. (VEREIT's Br. at 18.) VEREIT argues that, "as with any CEO of a publicly-traded company, Mr. Rufrano's responsibilities are broad and well-understood, encompassing the oversight of all operations of VEREIT." (VEREIT's. Br. at 19). That argument should not be taken seriously. The Individuals reasonably sought an understanding of the "significant management activities" of VEREIT's CEO and other executives. In response, they are effectively being told that those activities are so broad and well-understood that VEREIT cannot even answer the question. This is inconsistent with cooperative discovery.

**Interrogatory 14**: VEREIT's assertion that its response was complete because its executives traveled to Arizona generally "to conduct business for VEREIT" misses the point. This interrogatory was geared toward understanding what type of work these executives actually performed in Arizona while on these trips. Without that information, there is no way to know whether they actually made any high-level decisions while in Arizona.

**Interrogatory 18**: Information relating to VEREIT's board members, including where and when they spent time working on VEREIT-related matters is certainly relevant to where VEREIT's nerve center is actually located. VEREIT's argument to the contrary should be rejected.

**Interrogatory 19**: If VEREIT's position is that its board members attended board meetings but engaged in no other managerial activities while in Arizona and performed no other VEREIT-related work while in Arizona, then its answer suffices. Otherwise, the Individuals request a more detailed response to this interrogatory.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court compel Plaintiff to fully answer Defendants' Interrogatories in advance of the depositions of the two VEREIT officers who are knowledgeable about the management and affairs of VEREIT that are scheduled to take place on July 11 and 13, 2018.

Dated:  July 6, 2018                                     Respectfully submitted,


                                                         */s/ Robin L. Cohen*
                                                         Robin L. Cohen
                                                         New York Bar No.:  2254019
                                                         rcohen@mckoolsmith.com
                                                         Natasha Romagnoli
                                                         New York Bar No. 3040334
                                                         nromagnoli@mckoolsmith.com
                                                         **MCKOOL SMITH, P.C.**
                                                         One Bryant Park, 47th Floor
                                                         New York, New York  10036
                                                         Telephone:  (212) 402-9400
                                                         Facsimile:  (212) 402-9444

                                                         **ATTORNEYS FOR DEFENDANTS**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on July 6, 2018.

*/s/ Natasha Romagnoli*